982 P.2d 65 (1999)
1999 UT 39
In the Matter of the GENERAL DETERMINATION OF the RIGHTS TO the USE OF ALL the WATER, BOTH SURFACE AND UNDERGROUND, WITHIN the DRAINAGE AREA OF UTAH LAKE AND JORDAN RIVER IN UTAH, SALT LAKE, DAVIS, SUMMIT, WASATCH, SANPETE AND JUAB COUNTIES IN UTAH.
Captola C. Murdock, Jane C. Hinckley, Russell N. Stansfield, Lyle D. Hatch, Melvin L. Whiting, David and Ruth M. Fuller, William C. and Paula O. Jones, and A. Bert and Julia A. Cherrington, Plaintiffs and Appellants,
v.
Springville Municipal Corporation, Defendant and Appellee.
No. 960299.
Supreme Court of Utah.
April 23, 1999.
Rehearing Denied August 6, 1999.
*66 Paul M. Durham, J. Mark Gibb, Salt Lake City, for plaintiffs.
Jan Graham, Att'y Gen., Michael M. Quealy, John H. Mabey, Jr., Ass't Att'ys Gen., Dallin W. Jensen, Lee E. Kapaloski, Paul D. Veasy, James E. Karkut, Salt Lake City, for defendants.
ZIMMERMAN, Justice:
¶ 1 This matter is before us as two separate appeals from two separate but parallel proceedings that involve the same parties and the same subject matter. Factually, this case involves a dispute between several water users ("petitioners") and the city of Springville.[1] The petitioners are all water rights holders. They own land in Springville *67 and hold diligence rights to waters from a source in Spring Creek Canyon Creek ("Spring Creek"). Although the record is less than clear, it seems that the petitioners are all successors in interest to A.W. Cherrington ("Cherrington"). For descriptive clarity, we will therefore refer to the petitioners as the "Cherrington successors." Cherrington held diligence rights to water from this Spring Creek source dating back to the mid-nineteenth century, but he lost use of water from that specific source early in this century when Springville took it for its municipal water works. In exchange, Cherrington began receiving substitute water from a different source through the Highline Ditch (alternatively known as the "Highline Canal"). In essence, the Cherrington successors contend that they are entitled not to water from different sources in quantities equal to the diligence rights Cherrington held in Spring Creek, but to water from Spring Creek itself. They challenge the entitlement of Springville to the water of Spring Creek that has been diverted into the municipal water system for more than sixty years.
¶ 2 The Cherrington successors and Springville have been locked in this dispute for many years, first as part of an ongoing general water adjudication pertaining to all the waters of Utah Lake and its tributaries, and then as part of a separate proceeding brought pursuant to Utah Code Ann. § 73-4-24 ("section -24") by the Cherrington successors in an attempt to break the Spring Creek issues out from the general adjudication and accelerate their determination. Today, we address an interlocutory appeal from the general adjudication resolving issues against the Cherrington successors and an appeal dismissing the separate section -24 proceeding. The parties raise many issues. We find it necessary to address only the following allegations of trial court error: (i) the grant of partial summary judgment to Springville in the general adjudication; (ii) the denial of the Cherrington successors' motion to reconsider the partial summary judgment based on new evidence; (iii) the grant of Springville's motion to strike the first and second affidavits of Robert Murdock; and (iv) the grant of Springville's second motion to dismiss the Cherrington successors' section -24 petition. We decide each point against the Cherrington successors except that we reverse the grant of partial summary judgment to Springville as it relates to all the Cherrington successors except Captola Murdock.
¶ 3 This case has a long and convoluted history. Both the Cherrington successors and Springville claim water rights in Spring Creek dating back to the mid-nineteenth century. In 1911, Springville began development of its municipal water works and began taking water out of Spring Creek for those works; it traded water from Burt Springs for water of Spring Creek. In 1918, Springville began taking additional water from Spring Creek and replacing it with water from Hobble Creek. This was the trade that affected Cherrington. He lost his Spring Creek water and began receiving water from Hobble Creek in its place. The switch from Spring Creek to Hobble Creek sources was gradual and was completed by 1935. Springville delivered water from Hobble Creek to those individuals who had water rights in Spring Creek, including Cherrington, through the Highline Canal.
¶ 4 In 1936, Salt Lake City brought an action against approximately 2,430 defendants to determine water rights in Utah Lake and its tributaries. This court converted the suit into a general adjudication in 1944, which is still pending. See Salt Lake City v. Anderson, 106 Utah 350, 362, 148 P.2d 346 (1944). In 1961, Judge Maurice Harding of the Fourth District Court adjudicated a dispute between Springville and, inter alia, Captola Murdock within the context of the general adjudication. It was entitled W. Blaine Murdock and Captola C. Murdock, plaintiffs v. The City of Springville, a municipal corporation and Springville Irrigation Co., a Utah Corporation, defendants, Civil No. 22850. Judge Harding's ruling is hereinafter referred to as the "Harding decree." The meaning of the Harding decree is at issue in this case and it will be discussed at length.
¶ 5 In 1986, as part of the general adjudication, the State Engineer issued his Proposed Determination of Water Rights in *68 Utah Lake and Jordan River Drainage Area, Spanish Fork River Subdivision, Hobble Creek-Springville Subdivision, Code 51, No. 4 ("Proposed Determination") which purported to describe water rights in the Springville-Hobble Creek drainage, including the respective rights of the Cherrington successors and Springville. An extensive struggle ensued in two separate but parallel proceedings.
¶ 6 First, in the general adjudication, both Springville and the Cherrington successors filed objections to the Proposed Determination. In response to the objections, the State Engineer issued a 1992 Addendum to the Proposed Determination (hereinafter "Addendum"). The Cherrington successors then filed their objections to the Addendum, and Springville filed its response. In 1995, Springville filed a motion for partial summary judgment in the general adjudication. The motion was based on the claim that the principles of res judicata require the validation of the water rights of Springville that were adjudicated by the Harding decree and set forth in the State Engineer's Addendum. The Cherrington successors filed a memorandum in opposition to Springville's motion for partial summary judgment and an affidavit of Robert Murdock. Springville submitted a motion to strike the affidavit of Robert Murdock. In June of 1996, the trial court granted both Springville's motion to strike the Murdock affidavit and its motion for partial summary judgment. The court found that res judicata applied because the "State Engineer was obligated to apply the Harding Decree to the water rights of Murdock and Springville under Utah Code Ann. § 73-4-11 (1953)."
¶ 7 In November of 1996, the Cherrington successors filed a motion for partial summary judgment and a motion to reconsider the partial summary judgment granted to Springville in June of 1996. Both Springville and the State Engineer opposed the Cherrington successors' motions. In March of 1997, the trial court denied both of the Cherrington successors' motions. It found that the Cherrington successors "failed to present any new evidence or any evidence to justify their Motion to Reconsider" and that they "failed to establish any basis to reverse the Court's Order Granting Motion of Partial Summary Judgment" to Springville. The Cherrington successors sought an interlocutory appeal which we granted. It is one of the two appeals consolidated before us today.
¶ 8 While all this was going on in the general adjudication, the Cherrington successors also sought relief through parallel processes. In April of 1992, they filed a Petition for the Determination of Disputes Between the Petitioners and the Defendant Involving Less than all Parties to this Suit, pursuant to section -24. Springville filed a motion to dismiss the section -24 petition. Springville argued that the State Engineer had already addressed the specific water issues raised by the petition in the Addendum filed in the general adjudication. The trial judge dismissed the section -24 petition and ordered the Cherrington successors to proceed with their objections to the State Engineer's Addendum in the general adjudication.
¶ 9 The Cherrington successors appealed the dismissal to this court, arguing that the general adjudication had been proceeding for decades and might continue for additional decades. To force them to adjudicate their issues in the general adjudication would be to effectively deny them relief. We heard the matter and issued our opinion in Murdock v. Springville Municipal Corp., 878 P.2d 1147 (Utah 1994). We reversed the dismissal of the section -24 petition and remanded the case to the district court to make a determination as to whether it could hear the objections to the Addendum with reasonable promptness in the general adjudication. See id. at 1150. If the trial court concluded that it could resolve the issues raised in the section -24 petition with reasonable promptness, then it would not abuse its discretion in dismissing the section -24 petition. See id.
¶ 10 Following the remand, Springville filed its second motion to dismiss the section -24 petition. It argued that the issues raised in the section -24 petition and in the Cherrington successors' objections to the Addendum in the general adjudication were identical and that these issues could be resolved with reasonable promptness in a hearing in the general adjudication. The Cherrington *69 successors opposed the motion and filed another affidavit of Robert Murdock to support that opposition. Springville filed a motion to strike this Murdock affidavit and the trial court granted that motion along with Springville's second motion to dismiss. It granted the motion to dismiss stating that it is "willing and able to hear objections to the State Engineer's Addendum relating to the water rights between Springville and the Petitioners with reasonable promptness." The Cherrington successors filed a notice of appeal.
¶ 11 Thus, this matter comes to us by two different avenues. First, we accepted the interlocutory appeal from the trial court's grant of Springville's motion for partial summary judgment and its motion to strike the affidavit of Robert Murdock in the general adjudication. Second, this case comes to us as a direct appeal from the trial court's grant of Springville's motions: the second motion to dismiss and the motion to strike the affidavit of Robert Murdock filed in the section -24 proceeding.
¶ 12 We address each of the issues in this case in turn. We begin with the grant of Springville's motion for partial summary judgment in the general adjudication. We first state the standard of review and then proceed with our analysis. "Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Ryan v. Dan's Food Stores, Inc., 972 P.2d 395, 400 (Utah 1998) (citations omitted). Because a summary judgment presents questions of law, we review the trial court's ruling for correctness. See West v. Thomson Newspapers, 872 P.2d 999, 1004 (Utah 1994). "In reviewing a grant of summary judgment, we determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." Ryan, 972 P.2d at 400.
¶ 13 At the outset, we note that Springville's argument for summary judgment is based on claim or issue preclusion. Murdock, on the one hand, and the other Cherrington successors, on the other, are in different positions with respect to these claims, as we will note below. Under either of these theories, a party against whom summary judgment is sought must have been either a party to a previous adjudication or in privity with a party to a previous adjudication. See Fitzgerald v. Corbett, 793 P.2d 356, 359 (Utah 1990); Career Serv. Review Bd. v. Utah Dep't of Corrections, 942 P.2d 933, 938 (Utah 1997). While Captola Murdock was a party to a previous adjudication, none of the other Cherrington successors were parties and the record does not indicate that they are in privity with Murdock. Because we cannot determine that privity exists between Murdock and the other Cherrington successors, we cannot uphold the summary judgment against the other Cherrington successors on the basis of claim or issue preclusion. Consequently, the determination of the rights of the other Cherrington successors is reserved for trial along with the other issues not covered by the partial summary judgment.[2] Accordingly, the remainder of this discussion will focus on whether summary judgment was appropriately granted against Murdock.
¶ 14 Murdock argues that there are disputed material facts that barred the grant of summary judgment. However, the judgment appealed from was a partial summary judgment. In fact, the pre-trial order stated that two issues remained for trial after the grant of the partial summary judgment: (i) whether Springville timely filed its Supplemental Objection to the State Engineer's Proposed Determination; and (ii) whether the original *70 Proposed Determination should be amended regarding one of Springville's water user's claims. Therefore, while there may be some facts in dispute, we conclude that they are not relevant to the subject matter of the partial summary judgment. Furthermore, the facts to which Murdock points in her brief as being disputed appear to be indisputable at this time. She alleges facts that would have been relevant to Judge Harding's 1961 decision. Once he issued the decree, however, these factual issues were determined and are not now subject to attack by Murdock. We therefore conclude that there are no disputed material facts with regard to Murdock pertinent to the partial summary judgment.
¶ 15 We now move to the legal issues. Springville's motion for partial summary judgment was based on the trial court's finding that the Harding decree settled many of the questions being raised in the objections to the State Engineer's Proposed Determination and Addendum. Springville relied on "res judicata and/or collateral estoppel." Although neither the trial court nor Springville distinguished between res judicata and collateral estoppel, res judicata has two branches: claim preclusion and issue preclusion. See Swainston v. Intermountain Health Care, Inc., 766 P.2d 1059, 1061 (Utah 1988). In previous cases, we have explained that we
use "res judicata" to refer to the overall doctrine of the preclusive effects to be given to judgments. We will use the term "claim preclusion" to refer to the branch which has often been referred to as "res judicata" or "merger and bar." And we use the term "issue preclusion" to refer to the branch often termed "collateral estoppel."
Noble v. Noble, 761 P.2d 1369, 1374 n. 5 (Utah 1988) (citations omitted) (emphasis added). The trial court in the present case did not state which of these doctrines it was applying. The criteria needed to prevail on claim preclusion are different from those needed to prevail on issue preclusion. Therefore, we analyze both.
¶ 16 We first address claim preclusion. "Claim preclusion prevents parties or their privies from relitigating `a claim for relief that was once litigated on the merits and resulted in a final judgment....'" Salt Lake City v. Silver Fork Pipeline Corp., 913 P.2d 731, 733 (Utah 1995) (quoting Penrod v. Nu Creation Creme, Inc., 669 P.2d 873, 875 (Utah 1983)). For claim preclusion to apply, a party must prove the following: (i) both cases must involve the same parties, their privies or assigns; (ii) the claim sought to be barred either must have been presented or have been available to be presented in the first case; and (iii) the first suit must have resulted in a final judgment on the merits. See Fitzgerald v. Corbett, 793 P.2d 356, 359 (Utah 1990).
¶ 17 In the present case, the second criterion is not satisfied as to Murdock. While the Harding Decree settled some of the issues which are before this court, the legal claim at issue in that case was different from the one presented here. Murdock is now asserting that she has certain rights to the waters of Spring Creek, but in the 1961 proceeding, Judge Harding addressed only whether Springville was supplying the Murdocks the water they were entitled to under an exchange agreement. Because the claims are different, claim preclusion does not bar the present claim.
¶ 18 We next address issue preclusion, which prevents parties or their privies from relitigating issues which were once adjudicated on the merits and have resulted in a final judgment. The four elements of issue preclusion are: (i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits. See Career Serv. Review Bd., 942 P.2d at 938.
¶ 19 Regarding the first element, Murdock is a party against whom issue preclusion is asserted, and she was a party to the prior adjudication. Therefore, that element is satisfied. Regarding the second element, there is at least one issue which was decided in the *71 prior adjudication which is identical to the issue on which Springville seeks partial summary judgment. In the earlier case, Judge Harding settled water rights as between Springville and Murdock. Those findings are determinative of that same issue in the present case. Judge Harding stated that the Murdocks had a specified water right and that the water was to be delivered to them through the Highline Canal. He acknowledged that the exchange between Springville and the Murdocks had occurred. Murdock attempts to raise the exchange in the instant case. Since the question was resolved by Judge Harding, it cannot be raised again in the general adjudication. The State Engineer appropriately relied on Judge Harding's findings with regard to Murdock.
¶ 20 As to the third and fourth issue preclusion elements, there is no assertion that they are not met. Murdock neither denies that the issue was completely, fully, and fairly litigated, nor contends that the Harding decree was not a final judgment on the merits. As we have no reason to doubt that there was both a full and fair litigation of the issue before Judge Harding, we hold that the trial court properly granted summary judgment to Springville as to Murdock on the basis of issue preclusion.
¶ 21 We next address the trial court's denial of the Cherrington successors' motion to reconsider the partial summary judgment. The Cherrington successors supported their motion with an affidavit of Robert Murdock. The trial court concluded that the affidavit did not contain any new evidence. We must determine the correctness of that ruling.
¶ 22 We begin with the standard of review. A trial court's "denial of a motion to reconsider summary judgment [is reviewed] under rule 60(b) of the Utah Rules of Civil Procedure for abuse of discretion." Lund v. Hall, 938 P.2d 285, 287 (Utah 1997) (citing Timm v. Dewsnup, 921 P.2d 1381, 1386 (Utah 1996)). Here, we must determine whether the trial court abused its discretion in concluding that no new evidence was presented in support of the motion to reconsider. In making such a determination, we look to the substantive standard for granting a new trial. New evidence must be submitted and it must: (i) be such as it could not with reasonable diligence have been discovered and produced in opposition to the motion for summary judgment; (ii) not be merely cumulative; and (iii) be such as to render a different result probable. See State v. Goddard, 871 P.2d 540 (Utah 1994) (refusing to grant a motion for new trial where new evidence did not meet these standards); Timm v. Dewsnup, 921 P.2d at 1387 (requiring new evidence that raises a triable issue of fact to grant motion to reconsider).
¶ 23 In the present case, the Cherrington successors offered an affidavit of Robert Murdock. However, we have examined the affidavit and conclude that the trial judge did not abuse his discretion in concluding that the affidavit did not contain any newly-discovered information and that it merely reiterated the information that was in the other affidavits of Robert Murdock which previously had been stricken. The Cherrington successors argue that because Springville did not move to strike the new affidavit, it should be deemed admitted. Even if they are correct as to the effect of not objecting, it avails them nothing. Regardless of the admission of that affidavit, the court did not abuse its discretion in finding that the testimony it contains did not constitute "newly-discovered" evidence and, therefore, in refusing to reconsider the Cherrington successors' summary judgment. The information is identical to that which had been previously submitted.
¶ 24 We next consider the Cherrington successors' contention that the trial court erred in striking the first and second affidavits of Robert Murdock, which are identical in content. The Cherrington successors offered two affidavits from Murdock: one supported their opposition to Springville's motion for partial summary judgment in the general adjudication and the other supported their opposition to Springville's second motion to dismiss the section -24 petition. Springville filed a single motion to strike the affidavits even though the affidavits were offered in two separate proceedings. Springville based its motion on the argument that the affidavits "were riddled with inadmissible testimony." The trial court struck the affidavits first in a minute entry and then in the *72 orders granting the partial summary judgment in the general adjudication and dismissing the section -24 petition.
¶ 25 We first address the standard of review. There is no established standard for reviewing a decision striking affidavits. However, since an affidavit is simply a method of placing evidence of a fact before the court, we look to our prior decisions regarding the admission of evidence more generally. The standard of review for the admission of evidence varies depending on the type of evidence at issue. For example, in State v. Pena, 869 P.2d 932, 938 (Utah 1994), we stated that the decision to admit evidence under Utah Rule of Evidence 403 was on the "broad end of the [discretion] spectrum" like "[o]ther rulings on the admission of evidence [that] also generally entail a good deal of discretion," but in cases involving other categories of evidence, such as the admission of evidence that might violate the Fourth Amendment, "we narrow the [discretion granted] considerably for policy reasons." See id. (citations omitted). The same is true of evidence that has a high potential for unfair prejudice. See, e.g., State v. Dibello, 780 P.2d 1221, 1229 (Utah 1989) (holding admission of gruesome videotape as error). In civil cases such as the present one, where the evidence sought to be introduced does not raise concerns of the type that have produced heightened standards of sensitivity, a trial court decision to admit evidence is reviewed under a broad grant of discretion. See Pena, 869 P.2d at 938.
¶ 26 The next question is whether the trial court overstepped its broad discretion in rejecting the two Murdock affidavits. Rule 56(e) of the Utah Rules of Civil Procedure sets out the substantive requirements for affidavits. It states, in relevant part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
Utah R. Civ. P. 56(e). These requirements mirror those that apply to all evidence, and our case law on excluding affidavit evidence supports this. See, e.g., Treloggan v. Treloggan, 699 P.2d 747, 748 (Utah 1985) (affidavit based on unsubstantiated belief insufficient); Norton v. Blackham, 669 P.2d 857, 859 (Utah 1983) (conclusory affidavits are invalid); GNS Partnership v. Fullmer, 873 P.2d 1157, 1164-65 (Utah Ct.App.1994) (affidavits not based on personal knowledge were properly stricken).
¶ 27 Here, the trial court granted the motion to strike the Murdock affidavits for "the reasons suggested by Springville." Springville argued in detail that the affidavits were riddled with inadmissible testimony. We have reviewed the affidavits ourselves. Many of the facts they assert are not based on personal knowledge, lack foundation, are conclusory, and contain hearsay. Consequently, we hold that the trial court did not exceed the discretion granted it in striking the affidavits.
¶ 28 We turn now to the final issue: whether the trial court properly granted Springville's second motion to dismiss the Cherrington successors' section -24 petition. When the section -24 case was last before this court in Murdock v. Springville Municipal Corporation, 878 P.2d 1147 (Utah 1994), we reversed the trial court's grant of Springville's first motion to dismiss. The Cherrington successors had filed a section -24 petition that contained objections to the State Engineer's Addendum that were identical to those earlier filed in the general adjudication. We rejected Springville's assertion that the normal objection process in the general adjudication was the only remedy available to the Cherrington successors, and we held that a section -24 petition, allowed by Utah Code Ann. § 73-4-24 (1989), was also an appropriate route for the Cherrington successors to take. We then sent the matter back to the trial court for further proceedings, stating:
The trial court's discretion should be exercised with the objective of providing the plaintiffs with a reasonably prompt resolution of the issues raised in their section -24 petition. If the court can do so by holding a hearing on the objections made by the plaintiffs to the engineer's addendum [in the general adjudication], which raises identical issues, then the court would not *73 abuse its discretion by holding that hearing and dismissing the section -24 petition.
Murdock, 878 P.2d at 1150.
¶ 29 Upon the return of the case to the trial court, Springville filed a second motion to dismiss the section -24 petition. Springville argued that because the trial court could hold a hearing in the general adjudication on the objections raised in the Cherrington successors' objections to the Addendum with reasonable promptness, the section -24 petition should be dismissed. This argument was based on the fact that the objections to the Addendum were framed and ready for resolution. The trial court granted the motion to dismiss, stating:
The Court is willing and able to hear objections to the State Engineer's Addendum relating to the water rights between Springville and the Petitioners with reasonable promptness and is willing to set the matter for hearing as to those issues as soon as counsel are able to certify they are ready to proceed.
The court then set a trial date of January 27, 1997, for determining the objections. This was only five months after it handed down its decision on the motion to dismiss. In keeping with our statement in the first Murdock case, we review the trial court's determination that it can hear the objections with "reasonable promptness" under an abuse of discretion standard. We conclude that a five-month delay is "reasonably prompt" and that the trial court did not err in granting Springville's second motion to dismiss.
¶ 30 We find all of the other issues raised by the Cherrington successors to be without merit. The trial court's rulings are affirmed except that the grant of partial summary judgment against the Cherrington successors other than Murdock is reserved for a trial on the merits.
¶ 31 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice RUSSON and Judge ANDERSON concur in Justice ZIMMERMAN's opinion.
¶ 32 Having disqualified himself, Justice STEWART does not participate herein; District Court Judge JOHN R. ANDERSON sat.
NOTES
[1] The water users include Captola Murdock, Jane C. Hinckley, Russell N. Stansfield, Lyle D. Hatch, Melvin L. Whiting, David and Ruth M. Fuller, William C. and Paula O. Jones, and A. Bart and Julia A. Cherrington.
[2] Regarding the other Cherrington successors, Springville argues that the trial court could have taken, and that we should take, judicial notice of the State Engineer's findings in the Addendum and the facts determined by Judge Harding. Springville argues that these are sufficient, factually, to support the conclusion that the other Cherrington successors have no right to the water at issue. However, had the trial court taken such a step, it would have been error. Furthermore, this court cannot take judicial notice of factual determinations in one adjudication and use those facts against individuals who were not parties to that earlier adjudication. To do so would wholly undermine the policy of the res judicata doctrine. See 29 Am.Jur.2d Evidence §§ 133, 139 (1994).