2005 UT 19

**BRIGHAM YOUNG UNIVERSITY,**
Plaintiff and Appellee,

v.

TREMCO CONSULTANTS, INC., aka Tremco Legal Solutions, Inc., a Utah corporation, and John Does 1–10, Defendants and Appellant,

and

SoftSolutions, Inc., a non-incorporated association, Appellant.

Lee A. Duncan, Kenneth W. Duncan, Alvin S. Tedjamulia, Julee Associates, L.C., AST Associates, L.C., and KWD Associates, L.C., Movants to Intervene and Appellants.

Nos. 20020540, 20020687.

Supreme Court of Utah.

Feb. 1, 2005.

As Amended March 29, 2005.

Rehearing Denied March 20, 2005.

Herschel J. Saperstein, Steven W. Call, Michael D. Mayfield, Benjamin J. Kotter, Salt Lake City, for Brigham Young University.

Eric K. Schnibbe, Chris R. Hogle, Salt Lake City, for Tremco Consultants.

Earl Jay Peck, Salt Lake City, for SoftSolutions.

Clark R. Nielsen, Salt Lake City, for movants to intervene.

PARRISH, Justice:

¶1 Tremco Legal Solutions, Inc. ("Tremco") appeals from a summary judgment rendering it liable for an earlier judgment obtained by Brigham Young University ("BYU") against SoftSolutions, Inc. ("SoftSolutions"). We hold that the district court erred in summarily extending liability for BYU's earlier judgment to Tremco. SoftSolutions and individual appellants Kenneth W. Duncan; Alvin S. Tedjamulia; Lee A. Duncan; KWD Associates, L.C.; AST Associates, L.C.; and Julee Associates, L.C. (collectively, the "Duncan individuals and entities") appeal from a separate order of the district court that similarly rendered them liable for BYU's earlier judgment against SoftSolutions. We hold that we lack jurisdiction over the appeals of SoftSolutions and the Duncan individuals and entities and accordingly decline to address those appeals on the merits.

**BACKGROUND**

¶2 This case arrives with an extensive history of prior proceedings. Between 1987 and 1990, BYU entered into a series of software licensing agreements with SoftSolu- tions, the last of which allowed SoftSolutions to use BYU's DSearch software technology in exchange for royalty payments. A major dispute arose between BYU and SoftSolutions concerning use of the technology and payment of royalties. Negotiations failed, and the parties submitted the dispute to mediation. Mediation also failed, and BYU and SoftSolutions initiated arbitration proceedings pursuant to the terms of the license agreement.

¶3 In 1992, prior to the initiation of arbitration proceedings, SoftSolutions was administratively dissolved by the state of Utah for failing to file an annual report.[1] Before its dissolution, however, SoftSolutions assigned its technology licenses to an affiliated company, SoftSolutions Technology Corporation ("STC"), which had been formed a number of years earlier to develop and market software using the technology licenses held by SoftSolutions. SoftSolutions received no value for the assignment of its licenses to STC.

¶4 In 1994, WordPerfect, a company later acquired by Novell, purchased STC's stock. As stockholders of STC, three limited liability companies—KWD Associates, AST Associates, and Julee Associates—collectively received approximately $13.5 million from WordPerfect. In conjunction with the sale of STC's stock to WordPerfect, STC entered into an indemnification agreement with Tremco Consultants, Inc., a company that developed, marketed, and sold software pertaining to the management of law practices.[2] For a period in the late 1980s, Tremco did business as "SoftSolutions Legal Solutions"

---

1. SoftSolutions' administrative dissolution does not foreclose its participation in this case. An administratively dissolved corporation, such as SoftSolutions, may conduct "the business necessary to wind up and liquidate its business and affairs under section 16–10a–1405." Utah Code Ann. § 16–10a–1421(3)(a)(i) (2001). Under section 16–10a–1405, dissolution does not "prevent commencement of a proceeding ... against the corporation in its corporate name," nor does it "abate or suspend a proceeding pending ... against the corporation on the effective date of dissolution." *Id.* § 16–10a–1405(2)(e)–(f). Of course, because "[a] dissolved corporation continues its corporate existence," *id.* § 16–10a–1405(1), shareholders cannot be held individually liable for debts the corporation incurred prior to its dissolution. *Id.* § 16–10a–622(2) (noting shareholder insulation from suits against the corporation).

2. The limited record before the court does not disclose why Tremco agreed to assume liability for claims made against STC. The briefing, however, alludes to two possibilities. The first is that Tremco and STC shared common officers and directors. The second possibility arises from the fact that sales by Tremco were apparently included under the terms of the licensing agreement between BYU and SoftSolutions, which was eventually assigned to STC.

but eventually relinquished that name to the company that was to become SoftSolutions, the party to this case.

¶ 5 The indemnification agreement addressed the pending royalty dispute with BYU. In it, Tremco agreed to be responsible for any claims made against STC. The agreement was signed by an officer of STC and an officer of Tremco and recited, in relevant part, as follows:

A. Prior to the date hereof, certain disputes have arisen with respect to claims by [BYU] as to royalties claimed owing under license arrangements regarding the DSearch algorhythm [sic].

B. Tremco has been involved in defending that action and has, itself, asserted various claims against BYU as offsets or absolute defenses.

C. The parties hereto desire to clarify the respective responsibilities of the companies with respect to the BYU claims.

NOW THEREFORE, ...

1. Tremco consents and acknowledges that Tremco is the responsible party with respect to the BYU claims and is solely responsible for the defense and pursuit of claims with respect to that matter. In connection therewith, Tremco shall assume all costs and expenses of every nature, including legal costs and expenses with respect to the current disputes with BYU and shall indemnify and hold [STC] harmless from any and all claims, damages or liabilities of any nature, including but not limited to costs and attorneys' fees, stemming from or in connection with, BYU claims with respect to the DSearch algorhythm [sic].

¶ 6 BYU eventually prevailed against Soft-Solutions in the arbitration proceeding, obtaining an award in 1996 in the amount of $1,672,467, plus attorney fees (the "SoftSolutions judgment" or the "award"). The award was reviewed and confirmed by the district court in 1998 after SoftSolutions filed an action for declaratory judgment, seeking to have the award vacated or modified. After the district court confirmed the arbitration award, SoftSolutions appealed to this court. We affirmed the district court's confirmation of the award but remanded for a recalcula-tion of attorney fees. *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 57, 1 P.3d 1095.

¶ 7 Because SoftSolutions possessed few, if any, assets upon its dissolution, BYU experienced difficulty collecting its judgment. In January 2000, BYU initiated an action against Tremco in an attempt to establish Tremco's liability for BYU's judgment against SoftSolutions. The district court consolidated BYU's action against Tremco with the earlier action filed by SoftSolutions. Tremco answered and counterclaimed. BYU then moved to dismiss Tremco's counter-claim. Tremco opposed BYU's motion to dismiss and also moved for summary judgment on BYU's original claim. In connection with its opposition to BYU's motion to dismiss and its own motion for summary judgment, Tremco filed and relied on the affidavit of Kenneth W. Duncan ("Duncan affidavit"), an officer of Tremco, SoftSolutions, and STC. BYU responded to Tremco's motion for summary judgment with a motion for declaratory relief and a cross-motion for partial summary judgment on its claim against Tremco.

¶ 8 On May 14, 2002, the district court granted BYU's motion for partial summary judgment and denied Tremco's motion for summary judgment, holding Tremco liable for the judgment BYU had obtained years earlier against SoftSolutions. The court grounded its ruling on four theories: (1) Tremco was bound to the judgment against SoftSolutions under Utah Rule of Civil Procedure 17(d) because Tremco, STC, and Soft-Solutions were part of an association of entities carrying on a common business; (2) Tremco was liable to BYU for the judgment against SoftSolutions by virtue of Tremco's indemnity agreement with STC, of which BYU was a third-party beneficiary; (3) Tremco was liable for the judgment against SoftSolutions because Tremco aided a fraud-ulent transfer of SoftSolutions' assets to STC; and (4) Tremco, as a privy of SoftSolutions, was liable for BYU's judgment against SoftSolutions pursuant to the doctrines of res judicata and collateral estoppel. Also as part of its May 14, 2002 ruling, the district court granted BYU's motion to dismiss Tremco's counterclaim and its motion to strike the

Duncan affidavit. The district court entered judgment on the ruling on June 13, 2002, awarding BYU judgment against Tremco in the amount of the SoftSolutions judgment, plus interest and attorney fees.

¶ 9 Tremco appeals from the district court's ruling of May 14, 2002, and its judgment of June 13, 2002. Tremco asserts that the district court's imposition of liability upon it for BYU's judgment against SoftSolutions is fatally flawed and violative of Tremco's constitutional right to due process of law. Tremco additionally asserts that the district court erred in striking the Duncan affidavit.

¶ 10 On July 10, 2002, after the district court had issued its ruling and judgment against Tremco, it issued a supplemental order, on BYU's motion, extending liability for the SoftSolutions judgment to the Duncan individuals and entities. The district court based the supplemental order on Utah Rules of Civil Procedure 17(d) and 69(s), section 16-10a-1408 of the Utah Code, and two cases: *Murphy v. Crosland*, 915 P.2d 491 (Utah 1996), and *Steenblik v. Lichfield*, 906 P.2d 872 (Utah 1995). It also relied on additional exhibits BYU had filed with the court. Those exhibits consisted of records from the Utah Department of Commerce documenting the formation of KWD Associates, AST Associates, and Julee Associates before the sale of STC's stock to WordPerfect, as well as photocopies of checks made by WordPerfect to the three companies for the purchase of STC's stock.

¶ 11 SoftSolutions and the Duncan individuals and entities contest the district court's extension of liability to them in its July 10, 2002 supplemental order. They argue that they cannot be held liable for the SoftSolutions judgment because they were never made parties to the action below and because the district court improperly disregarded the legal separation between corporate entities.

## ANALYSIS

¶ 12 We begin by addressing Tremco's appeal from the district court's ruling, issued May 14, 2002, and judgment, issued June 13, 2002, which rendered Tremco liable for BYU's judgment against SoftSolutions. We then address the appeal filed by SoftSolutions and the Duncan individuals and entities with respect to the validity of the supplemental order.

## I. TREMCO'S APPEAL

¶ 13 Summary judgment is appropriate when there are no genuine issues of material fact and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "We review the [district] court's order granting ... summary judgment for correctness and accord no deference to the [district] court's legal conclusions." *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 14, 56 P.3d 524. In addition, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).

¶ 14 As we discussed above, the district court articulated four separate legal grounds pursuant to which it awarded summary judgment to BYU. Tremco contends that none of them presents a valid basis for holding it liable for BYU's judgment against SoftSolutions. In the following sections, we review each of the grounds on which the district court relied.

### A. Liability Under Rule 17(d)

¶ 15 First, the district court ruled that Tremco was liable for BYU's judgment against SoftSolutions pursuant to rule 17(d) of the Utah Rules of Civil Procedure. Rule 17(d) provides:

> When two or more persons associated in any business either as a joint-stock company, a partnership or other association, not a corporation, transact such business under a common name, whether it comprises the names of such associates or not, they may sue or be sued by such common name. Any judgment obtained against the association shall bind the joint property of all the associates in the same manner as if all had been named parties and had been sued upon their joint liability.

Utah R. Civ. P. 17(d). The district court accepted BYU's argument that Tremco was part of an unincorporated association with

STC and SoftSolutions that carried on a common business after SoftSolutions was dissolved and ruled that Tremco could consequently be held jointly liable for the judgment against SoftSolutions.

¶ 16 Tremco contends on appeal that the district court erroneously applied rule 17(d) because no association existed among Tremco, STC, and SoftSolutions, and because Tremco never held a joint interest in any property with SoftSolutions. In addition, Tremco argues that rule 17(d) does not apply to this case because a common name was never used by the three entities and, in any event, BYU did not sue the entities under a common name.

¶ 17 We agree that the district court erroneously applied rule 17(d). Rule 17(d) is procedural, not substantive. It contemplates a situation where a plaintiff brings suit against two or more associates that have joined together under a common name to transact business. By its plain language,[3] rule 17(d) provides that an unincorporated association may be sued under the name used by the collective associates to carry out their business. Utah R. Civ. P. 17(d). The rule does not constitute an independent substantive basis for imposing judgment against a business associate based on the existence of a separate judgment against another alleged associate.

¶ 18 Rule 17(d) is inapplicable in this case because BYU neither sued nor obtained a judgment against an unincorporated association. Instead, BYU brought its claims for arbitration specifically against SoftSolutions based on a contract entered into by BYU and SoftSolutions containing an arbitration clause. The judgment resulting from the arbitration proceedings, and later confirmed by the district court, was entered specifically against SoftSolutions, a corporate entity, and not against an unincorporated association comprised of multiple associates. Rule 17(d) is not a tool for retroactively altering or recharacterizing the identity of the parties to

a prior proceeding. The district court therefore erred in relying on rule 17(d) as a basis on which to hold Tremco liable for BYU's judgment against SoftSolutions.

### B. Liability Under the Indemnification Agreement

¶ 19 The district court also ruled that Tremco was liable to BYU pursuant to the indemnification agreement that Tremco entered with STC in 1994 in connection with the sale of STC's stock to WordPerfect.[4] In that agreement, Tremco assumed responsibility for the litigation concerning BYU's DSearch software technology and agreed to hold STC "harmless from any and all claims, damages or liabilities of any nature . . . stemming from or in connection with . . . BYU claims with respect to the Dsearch algorhythm [sic]."

¶ 20 BYU persuaded the district court that the terms of the indemnification agreement rendered it a third-party beneficiary of that agreement, thereby conferring upon it the right to directly enforce against Tremco its judgment against SoftSolutions. It reiterates this position on appeal, asserting that it is an intended beneficiary of Tremco's agreement with STC. To support its position, BYU relies on *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382 (Utah 1989), in which we agreed with the holdings of courts in other jurisdictions that "one who assumes a debtor's obligations creates enforceable third-party beneficiary rights in the debtor's creditors." *Id.* at 1387. It also relies on section 302 of the Restatement of Contracts, which provides that,

[u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary.

---

**3.** We construe our rules of civil procedure according to their plain language. *See First Equity Fed., Inc. v. Phillips Dev., LC,* 2002 UT 56, ¶ 16, 52 P.3d 1137 (noting that "the plain language of [rule 41(a)(1) of the Utah Rules of Civil Procedure] demonstrates that it does not apply to all types of dismissals").

**4.** The recitals of this agreement are set out in paragraph 5, *supra.*

Restatement (Second) of Contracts § 302(1)(a) (1981).

¶ 21 We have no quibble with BYU's recitation of intended beneficiary principles, but those principles are not applicable here. Tremco's liability for the SoftSolutions judgment cannot arise from the indemnification agreement because SoftSolutions was not a party to that agreement, and nowhere in the agreement did Tremco agree to assume liability for SoftSolutions' obligations to BYU. The indemnification agreement was expressly made between Tremco and STC; Tremco was the promisor, and STC was the promisee. SoftSolutions was never mentioned in the agreement. Therefore, to the extent that BYU is an intended beneficiary of the agreement, it could attempt to collect from Tremco a hypothetical judgment entered against STC, but not one entered against SoftSolutions. BYU's judgment, however, was entered only against SoftSolutions. BYU has not asserted an alter ego theory of liability, attempted to pierce a corporate veil, or otherwise demonstrated why Tremco is legally responsible under the indemnification agreement for SoftSolutions' debt. BYU's arguments regarding its right to collect from Tremco under the indemnification agreement are therefore untenable, and we hold that the district court erred in relying on them as a basis for imposing liability on Tremco.

### C. Liability Under the Uniform Fraudulent Transfer Act

■ ¶ 22 The district court relied on the Uniform Fraudulent Transfer Act, Utah Code Ann. §§ 25–6–1 to –13 (1998), as its third basis for extending liability to Tremco.[5] Section 25–6–5 defines a fraudulent transfer as one made "with actual intent to hinder, delay, or defraud any creditor of the debtor" or one made "without receiving a reasonably equivalent value in exchange for the transfer or obligation." Id. § 25–6–5(1)(a)–(b). The last situation requires either that the debtor's remaining assets be "unreasonably small in relation to the business or transaction" or that the debtor "intended to incur, or be-

lieved or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Id. § 25–6–5(1)(b)(i)–(ii). The district court accepted BYU's arguments that Tremco defrauded BYU by "asserting control over" SoftSolutions and aiding a fraudulent transfer of SoftSolutions' assets to STC. It failed to explain, however, how the Uniform Fraudulent Transfer Act renders Tremco liable for the SoftSolutions judgment.

¶ 23 Under the Uniform Fraudulent Transfer Act, a creditor who has shown that its debtor fraudulently transferred assets, and who has obtained a judgment against that debtor, may, by court order, "levy execution on the asset transferred or its proceeds." Id. § 25–6–8(2). In this case, the assets at issue (DSearch technology licenses) were transferred from SoftSolutions to STC, with SoftSolutions receiving no value for the transfer. The assets were owned by STC when WordPerfect acquired STC's stock. The proceeds from the stock sale went to shareholders KWD Associates, L.C.; AST Associates, L.C.; and Julee Associates, L.C. BYU has not claimed that Tremco received any proceeds of the sale, and Tremco specifically denies having done so. Because Tremco did not transfer the assets, did not receive the assets, and did not receive proceeds from the transfer, section 25–6–8(2) does not provide a vehicle pursuant to which BYU can recover from Tremco. See id. The district court failed to articulate any additional reasoning or authority supporting the conclusion that Tremco is liable to BYU under the Uniform Fraudulent Transfer Act. We therefore conclude that the district court erred in relying on the Uniform Fraudulent Transfer Act as a basis for granting summary judgment to BYU.

### D. Liability Under the Doctrine of Res Judicata

■ ¶ 24 Finally, the district court held that the SoftSolutions judgment is binding upon Tremco as a matter of law under the doctrine of res judicata. Specifically, it

---

5. In 2003, the Utah Legislature added section 25–16–14 to the Uniform Fraudulent Transfer Act. See 2003 Utah Laws ch. 301, § 2; Utah Code Ann. § 25–6–14 (Supp.2004). That section, however, has no bearing on our resolution of this issue.

found that Tremco was a privy to the proceeding between BYU and SoftSolutions because Tremco "controlled and paid for" the litigation and, consequently, that both claim preclusion and issue preclusion extend SoftSolutions' liability to Tremco. Tremco argues on appeal that the district court erred in finding Tremco a privy of SoftSolutions and misused the doctrine of res judicata. We agree with Tremco and hold that res judicata does not provide a basis for summarily transferring to Tremco liability for the SoftSolutions judgment. In fact, to apply it in such a manner would contravene constitutional principles of due process.

¶ 25 Before addressing the substance of Tremco's claim on appeal, we pause to outline some general principles of res judicata. "In previous cases, we have explained that we use 'res judicata' to refer to the overall doctrine of the preclusive effects to be given to judgments." *Murdock v. Springville Mun. Corp. (In re General Determination of the Rights to the Use of All the Water)*, 1999 UT 39, ¶ 15, 982 P.2d 65; *see also Culbertson v. Bd. of County Comm'rs*, 2001 UT 108, ¶ 12, 44 P.3d 642 ("The doctrine of res judicata describes the binding effect of a previous adjudication on a current adjudication."). "[R]es judicata has two branches: claim preclusion and issue preclusion." *Murdock*, 1999 UT 39 at ¶ 15, 982 P.2d 65.

¶ 26 "In general terms, claim preclusion bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." *Culbertson*, 2001 UT 108 at ¶ 13, 44 P.3d 642. For claim preclusion to apply, three requirements must be met:

> (1) [T]he subsequent action must involve the same parties, their privies, or their assigns as the first action, (2) the claim to be barred must have been brought or have been available in the first action, and (3) the first action must have produced a final judgment on the merits of the claim.

*Id.; see also Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 34, 73 P.3d 325.

¶ 27 In contrast, issue preclusion, also referred to as collateral estoppel, "prevents parties or their privies from relitigat-ing issues which were once adjudicated on the merits and have resulted in a final judgment." *Murdock*, 1999 UT 39 at ¶ 18, 982 P.2d 65; *see also Macris & Assocs. v. Neways, Inc.*, 2000 UT 93, ¶ 34, 16 P.3d 1214. The four requirements of issue preclusion are as follows:

> [1] [T]he party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; [2] the issue decided in the prior adjudication must be identical to the one presented in the instant action; [3] the issue in the first action must have been completely, fully, and fairly litigated; and [4] the first suit must have resulted in a final judgment on the merits.

*Murdock*, 1999 UT 39 at ¶ 18, 982 P.2d 65.

¶ 28 Preclusion advances judicial economy by preventing the unnecessary relitigation of claims and issues. *Tyus v. Schoemehl*, 93 F.3d 449, 453–54 (8th Cir. 1996); *see also Snyder*, 2003 UT 13 at ¶ 33, 73 P.3d 325 ("The doctrine of res judicata serves the important policy of preventing previously litigated issues from being relitigated." (internal quotations omitted)). "[D]ue process concerns are present," however, "when the party sought to be precluded was not an actual party in the first lawsuit." *Tyus*, 93 F.3d at 454. Those concerns exist in part "[b]ecause preclusion based on privity is an exception to the 'deep-rooted historic tradition that everyone should have his own day in court,'" *id.* (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996)), and because of the "general consensus in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process," *Richards*, 517 U.S. at 798, 116 S.Ct. 1761 (internal quotations omitted). Therefore, "courts must ensure that the relationship between the party to the original suit and the party sought to be precluded in the later suit is sufficiently close to justify preclusion." *Tyus*, 93 F.3d at 454. "[T]he due process clauses prevent preclusion when the relationship between the party and non-party becomes too attenuated.'" *Id.*

(quoting *Southwest Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.1977)). In addition, "we resolve all doubts in favor of permitting parties to have their day in court on the merits of a controversy." *Baxter v. Utah Dep't of Transp.*, 705 P.2d 1167, 1169 (Utah 1985).

¶ 29 With these principles in mind, we now turn to Tremco's claim. Although Tremco was not a party to the proceeding against SoftSolutions, BYU argues that the district court properly relied on res judicata to hold Tremco liable for the judgment resulting from that proceeding because Tremco is a privy of SoftSolutions. We have stated that "a person in privity with another ... is a person so identified in interest with another that he represents the same legal right." *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978). Courts have identified various circumstances that generally give rise to privity, including "a mutual or successive relationship to rights in property," *id.; see also* Restatement (Second) of Judgments § 43(1) (1982), and representation by a legally appointed individual, *see Richards*, 517 U.S. at 798, 116 S.Ct. 1761 ("[A] judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust."). *See generally* Restatement (Second) of Judgments ch. 4 (entitled "Parties and Other Persons Affected by Judgments").

¶ 30 Here, BYU relies, as did the district court, on another circumstance in which privity may exist for res judicata purposes—assertion of control over litigation by a nonparty to the suit. The district court relied on two authorities for this proposition. First, it quoted *Montana v. United States*, in which the Supreme Court stated:

[The interests served by the doctrine of res judicata] are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously involved. As this Court observed in *Souffront v. Compagnie des Sucreries*, 217 U.S. 475, 486–87, 30 S.Ct. 608, 54 L.Ed. 846 (1910), the persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause.... [O]ne

who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record."

440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (second alteration in original) (footnote omitted). Second, the district court quoted section 39 of the Restatement of Judgments, which states that "[a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." Restatement (Second) of Judgments § 39.

¶ 31 The district court apparently concluded that the principles described in the foregoing authorities support a finding of privity in this case because the recitals of the indemnification agreement, set forth in paragraph 5, *supra*, establish as a matter of record that Tremco paid for and controlled the litigation against SoftSolutions. The district court thus concluded that "[Tremco's] interest has been legally represented in the first action and ... it was privy to the prior litigation. As such it is bound by the final judgment."

¶ 32 In response to the district court's conclusion, we note first that the concept of privity based on a nonparty's control of litigation is applicable to the doctrine of issue preclusion, but not to the doctrine of claim preclusion. The comments to section 39 of the Restatement of Judgments explain that "[t]he rule stated in the Section applies to issue preclusion, and not to claim preclusion, because the person controlling the litigation, as a nonparty, is by definition asserting or defending a claim other than one he himself may have." Restatement (Second) of Judgments § 39 cmt. b. The Supreme Court recognized this in *Montana*, in which it reasoned that the preclusion of nonparties with financial control over litigation "falls under the rubric of collateral estoppel rather than res judicata because the latter doctrine presupposes the identity between causes of action. And the cause of action which a nonparty has vicariously asserted differs by def-

inition from that which he subsequently seeks to litigate in his own right." 440 U.S. at 154, 99 S.Ct. 970. We thus assess the district court's ruling for its viability under the doctrine of issue preclusion.

¶ 33 The district court failed to identify the individual issue determinations by which it concluded Tremco should be bound. It similarly failed to analyze whether BYU had established the four requirements of issue preclusion. Instead, it ruled only that issue preclusion applied and then summarily extended liability for the entire SoftSolutions judgment to Tremco. By ignoring the particular requirements of issue preclusion, the district court erred.

¶ 34 One of the four requirements for applying the doctrine of issue preclusion is that "the issue decided in the prior adjudication ... be identical to the one presented." *Culbertson*, 2001 UT 108 at ¶ 25, 44 P.3d 642. That requirement was not met here. The issue adjudicated in the prior case, via arbitration, was SoftSolutions' liability to BYU for royalty payments. The issue presented in this case is not SoftSolutions' liability for the royalties, but Tremco's liability for the royalties. Had BYU established an independent basis for holding Tremco liable for SoftSolutions' obligations, the doctrine of issue preclusion may well have operated to bar Tremco from contesting SoftSolutions' liability for the royalties. Issue preclusion cannot, however, operate to transfer a judgment of liability from one entity or individual to another.

¶ 35 Declaring a party bound by the determination of specific issues in a prior proceeding is entirely different from declaring a party bound by the ultimate judgment of liability in a prior proceeding. Transferring the complete judgment of liability to a second entity requires additional findings establishing the appropriateness of the transfer. In cases involving liability between and among corporations, findings of alter ego or a piercing of the corporate veil, for example, could suffice to establish the appropriateness of extending or transferring the liability of one corporate entity to another. *See* Restatement (Second) of Judgments § 59 (discussing circumstances under which "a judg-

ment in an action to which a corporation is a party has ... preclusive effects"). Absent such findings, however, liability cannot be imposed upon the second entity without displacing substantive precepts of corporate law.

¶ 36 BYU's judgment against SoftSolutions arose from a breach of a licensing agreement in which SoftSolutions agreed to pay royalties for the use of BYU's software technology by SoftSolutions and its affiliates. *Softsolutions, Inc.*, 2000 UT 46 at ¶¶ 2, 20, 1 P.3d 1095. While the arbitrator considered "whether sales by Tremco under the first series of licenses with SoftSolutions is includable in the award of royalties," neither BYU nor the district court delineated, in terms of corporate legal principles, why Tremco should be held liable for the full amount determined owing under the licensing agreement between SoftSolutions and BYU.

¶ 37 BYU argues that the district court properly transferred liability to Tremco because Tremco and its officers were involved in the prior litigation and because there was a commonality of officers and directors among Tremco, SoftSolutions, and STC. Under elementary principles of corporate law, however, officers and stockholders of corporations are generally not held to be in privity with their corporations and are not personally bound by judgments against those corporations. *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir.1974); *see also* Utah Code Ann. § 16–10a–622(2) (2001). Indeed, a "substantial purpose" of the corporate form "is to create an incentive for investment by limiting exposure to personal liability. The insulation of a stockholder from the debts and obligations of his corporation is the norm, not the exception." *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1051 (10th Cir.1993) (internal quotations omitted). Moreover, "[a] corporation is entitled to a presumption of separateness from a sister corporation even if both are controlled by the same individuals." *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1077 (Utah Ct.App. 1998).

¶ 38 As we have already mentioned, BYU did not pursue any claims under any theories

such as alter ego, which would have allowed for a wholesale transfer of liability from Soft-Solutions to Tremco. *See Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 36, 84 P.3d 1154 ("The corporate form may be disregarded when there is 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist ... and the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.' This is commonly referred to as 'the alter ego theory.'" (quoting *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979))). Thus, although the relationship between Tremco and SoftSolutions appears to have been close enough to invoke principles of issue preclusion, the relationship was not otherwise shown, legally or factually, to be of a type allowing for a subsequent transfer of the complete judgment against SoftSolutions to Tremco. The district court thus erred in granting summary judgment to BYU.

### E. The Duncan Affidavit

¶ 39 We next turn to Tremco's claim that the district court erred in granting BYU's motion to strike the affidavit of Kenneth W. Duncan, an officer of Tremco, Soft-Solutions, and STC.[6] The Duncan affidavit, however, does not appear in either the abbreviated record designated by the parties or the addenda to any of the briefs. While the record contains an affidavit of Kenneth W. Duncan, that affidavit does not match by date or content the affidavit discussed in the briefs.

¶ 40 The Utah Rules of Appellate Procedure specifically require appellants to include, in an addendum to their briefs, "those portions of the record on appeal that are of central importance to the determination of the appeal." Utah R.App. P. 24(a)(11)(C). In an appeal such as this, where we are asked to reverse the district court's order striking a particular affidavit, we deem the affidavit at issue of central importance to the determination of the appeal and require that it be included in the addendum to the appel-

lant's brief. Tremco's failure to include the Duncan affidavit in the addendum, as well as the affidavit's absence from the abbreviated record before us, renders it impossible for us to adequately consider Tremco's claim that the district court erred in striking the affidavit. We accordingly decline to address it.

¶ 41 Even if the affidavit were included in the addendum, however, we would find it unnecessary to decide whether it is admissible. Tremco relied on the Duncan affidavit in opposing BYU's motion for summary judgment. Because we have reversed on legal grounds the summary judgment entered in favor of BYU, Tremco's arguments regarding the admissibility of Mr. Duncan's testimony are not determinative of that issue.

¶ 42 Tremco's briefing suggests that the admissibility of the Duncan affidavit is also germane to its motion for summary judgment on its counterclaim against BYU, which the district court denied. Nowhere in its briefs, however, does Tremco provide a reasoned explanation for why our reversal of the district court's grant of partial summary judgment in favor of BYU requires us to likewise reverse the district court's denial of summary judgment in favor of Tremco on the same claim. Instead, Tremco merely requests, almost in passing, that we grant summary judgment in its favor. Because "this court is not a depository in which the appealing party may dump the burden of argument and research," *State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820 (internal quotations omitted), we decline to grant Tremco's request. Tremco is, of course, free to renew its motion for summary judgment in the district court in light of the legal conclusions expressed in this opinion.

## II. THE SUPPLEMENTAL ORDER

¶ 43 As described above, on July 10, 2002, the district court entered a supplemental order rendering the Duncan individuals and entities liable for BYU's judgment against SoftSolutions. The order identified Kenneth W. Duncan, Alvin S. Tedjamulia, and Lee A. Duncan as officers of Tremco and STC and

---

6. Tremco submitted the Duncan affidavit in opposition to BYU's motion for summary judgment

and in support of its own motion for summary judgment.

named KWD Associates, AST Associates, and Julee Associates as limited liability companies that received proceeds from the sale of STC's stock. The order extended liability for BYU's judgment against SoftSolutions to the Duncan individuals and entities based on Utah Rules of Civil Procedure 17(d) and 69(s), section 16–10a–1408 of the Utah Code, *Murphy v. Crosland*, 915 P.2d 491 (Utah 1996), and *Steenblik v. Lichfield*, 906 P.2d 872 (Utah 1995). The Duncan individuals and entities were neither served with process nor made parties to the case prior to issuance of the supplemental order.

¶ 44 After the supplemental order was issued, SoftSolutions objected and moved for relief pursuant to rules 52(b), 59(a), 59(e), and 60(b) of the Utah Rules of Civil Procedure. The Duncan individuals and entities moved to intervene in the proceeding. They also moved "to vacate and set aside [the order] in its entirety and to grant a new trial, or in the alternative, to amend the [f]indings and [o]rder." That motion was similarly made pursuant to Utah Rules of Civil Procedure 52(b), 59(a) and (e), and 60(b). The premise of the motion filed by the Duncan individuals and entities was that no order affecting their assets and liabilities could be entered without their first having been served with process and made parties to the action. They argued that due process entitles them to their day in court and to "the right to respond and litigate, after receiving properly alleged claims that they, or their assets, are subject to execution and collection by BYU."

¶ 45 The district court held a hearing on July 22, 2003, in which it orally denied the motion to intervene filed by the Duncan individuals and entities on the basis that their interests were adequately represented by SoftSolutions. The district court also orally denied the motions to vacate or amend the supplemental order, finding that "no due process violations" had occurred. For reasons never adequately explained by the parties to this appeal, the district court failed to document its oral rulings in a written order. BYU accordingly argues on appeal that we do not have jurisdiction to review the supplemental order because Tremco, SoftSolutions, and the Duncan individuals and entities filed their notices of appeal prior to a final disposition of their postjudgment motions. Despite our serious concerns regarding the validity of the supplemental order, we agree with BYU that we lack jurisdiction to review it.

¶ 46 We see, however, an even more fundamental jurisdictional problem with the Duncan individuals and entities' appeal than the timing of their notices of appeal, namely, that they are not parties to this proceeding. BYU never filed a complaint naming any of the Duncan individuals or entities and none of them were ever served with process. Although the supplemental order of July 10, 2002, provides that BYU's judgment against SoftSolutions may be enforced against assets of the Duncan individuals and entities, none of those individuals or entities were parties to the district court proceedings. As nonparties, they cannot appeal the supplemental order.[7] *See State v. Sun Sur. Ins. Co.*, 2004 UT 74, ¶ 9, 99 P.3d 818 (noting that "[a] surety cannot bring a direct appeal in a criminal case because it is not a party to the criminal case"). "Where an appeal is not properly taken, this court lacks jurisdiction and we must dismiss." *Bradbury v. Valencia*, 2000 UT 50, ¶ 8, 5 P.3d 649.

¶ 47 We similarly conclude that we lack jurisdiction over SoftSolutions' appeal of the supplemental order. Unlike the Duncan individuals and entities, SoftSolutions is a party to this proceeding, but we agree with BYU that SoftSolutions filed its only notice of appeal prior to a final disposition of its

---

7. The denial of a motion to intervene is an appealable order. *See Tracy v. Univ. of Utah Hosp.*, 619 P.2d 340, 341–42 (Utah 1980). Accordingly, when the district court reduces to writing its oral ruling denying the motion to intervene filed by the Duncan individuals and entities, that order will be subject to appeal. That appeal, however, will present issues distinct from those regarding the validity of the supplemental order itself, which the Duncan individuals and entities have attempted to raise here. Because they were not parties to the proceedings below, an extraordinary writ is the vehicle pursuant to which the Duncan individuals and entities could properly have challenged the supplemental order. *State v. Sun Sur. Ins. Co.*, 2004 UT 74, ¶ 19 n. 1, 99 P.3d 818; *see also* Utah R. Civ. P. 65B(a).

postjudgment motions directed to that order. Rule 4 of the Utah Rules of Appellate Procedure provides that "[a] notice of appeal filed before the disposition of [a postjudgment motion under rule 50(b), 52(b), or 59] shall have no effect." Utah R.App. P. 4(b). In *Transamerica Cash Reserve, Inc. v. Hafen*, 723 P.2d 425 (Utah 1986) (per curiam), we stated that "[a] notice of ·appeal filed before the disposition of a proper post-judgment motion is ineffective to confer jurisdiction upon this Court. Finality of a judgment is suspended upon timely filing of a post-judgment motion . . . , and the time for appeal does not commence until final disposition of that motion." *Id.* at 426 (citations omitted). Because Soft-Solutions filed its notice of appeal of the supplemental order prior to the district court's disposition of its motion to vacate, amend, or alter that order, the notice of appeal failed to confer jurisdiction on this court.[8]

## CONCLUSION

¶ 48 We reverse the summary judgment entered by the district court. The district court erred in holding Tremco liable for BYU's judgment against SoftSolutions. Although BYU presented evidence of cobelligerent conduct among SoftSolutions, Tremco, and STC, BYU failed to plead or prove any legal theories that would legitimately extend SoftSolutions' liability to Tremco.

¶ 49 The appeal of the supplemental order filed by SoftSolutions and the Duncan individuals and entities appears to raise tenable claims. We lack jurisdiction, however, to address SoftSolutions' claims on the merits because SoftSolutions' appeal was filed prior to a final disposition of the postjudgment motions related to the supplemental order, and we also lack jurisdiction over the Duncan individuals and entities' appeal of the supplemental order because they are not parties to these proceedings.

8. SoftSolutions may file a new notice of appeal when the district court reduces to writing its ruling on the motion to vacate. If the district court fails to reduce its ruling to writing, the appropriate procedural vehicle for obtaining re-

¶ 50 The matter is remanded to the district court for further proceedings consistent with this opinion.

¶ 51 Chief Justice DURHAM, Justice NEHRING, Judge DAVIS, and Judge ATHERTON concur in Justice PARRISH'S opinion.

¶ 52 Having disqualified themselves, Associate Chief Justice WILKINS and Justice DURRANT do not participate herein; Court of Appeals Judge JAMES Z. DAVIS and District Judge JUDITH S.H. ATHERTON sat.

view of the supplemental order would be through a petition for extraordinary writ. *Sun Sur. Ins. Co.*, 2004 UT 74 at ¶ 19 n. 1, 99 P.3d 818; *see also* Utah R. Civ. P. 65B(a).