222 P.3d 1172 (2009)
2009 UT 83
STATE of Utah, in the interest of D.A., a person under eighteen years of age.
D.D.A., Appellant,
v.
State of Utah, Appellee.
No. 20071015.
Supreme Court of Utah.
December 15, 2009.
Rehearing Denied December 14, 2009.
*1174 S. Grace Acosta, Salt Lake City, for appellant.
Mark L. Shurtleff, Att'y Gen., Carol L.C. Verdoia, Asst. Att'y Gen., Salt Lake City, for appellee.
Kelly Ryan, Salt Lake City, for the Office of the Guardian ad Litem.

AMENDED OPINION[*]

On Certification from the Utah Court of Appeals.
PARRISH, Justice:

INTRODUCTION
¶ 1 This appeal requires us to determine whether the juvenile court erred by failing to grant Daniel Dean Austin ("Mr. Austin") an evidentiary hearing on his motion to determine his right to notice of and consent to the adoption of D.A., a minor child, under Utah Code section 78-30-4.14 (Supp.2007).[1] Section 78-30-4.14 broadly addresses when consent to an adoption is necessary and specifically sets forth the requirements an unmarried biological father must satisfy before his consent to an adoption is required.
¶ 2 In determining whether the juvenile court erred, we address the following four issues: (1) did the juvenile court substantively adjudicate Mr. Austin's paternity?; (2) do principles of res judicata bar Mr. Austin from seeking the right to notice of and consent to any adoption of D.A.?; (3) did Mr. Austin waive his right to notice and consent by failing to establish paternity before D.A.'s mother relinquished her parental rights?; and (4) is establishment of paternity a prerequisite to asserting rights under section 78-30-4.14?
*1175 ¶ 3 We hold that: (1) there was no final adjudication of Mr. Austin's paternity; (2) principles of res judicata do not apply; (3) Mr. Austin did not waive his right to notice and consent; and (4) establishment of paternity is not a prerequisite to asserting rights under section 78-30-4.14. Therefore, the juvenile court erred by failing to grant Mr. Austin an evidentiary hearing and we remand for further proceedings consistent with this opinion.

BACKGROUND
¶ 4 On January 3, 2007, A.R. ("Mother") gave birth to D.A. Mr. Austin asserts that he was originally named as the father on D.A.'s birth certificate, but his name was removed from the birth certificate after he failed to confirm paternity with the Department of Vital Statistics due to his incarceration at the time of D.A.'s birth. Nevertheless, he proffers a birth announcement that was published in the newspaper indicating that a son had been born to "[Mother] and AUSTIN, Daniel." Both before and after D.A.'s birth, Mr. Austin claims that he wrote numerous letters to his parents indicating that Mother was pregnant with his child and that he desired to raise the child.
¶ 5 In late July 2007, at approximately seven months of age, D.A. was placed in the protective custody of the Division of Child and Family Services ("DCFS"). During the shelter hearing, Mother informed the juvenile court that Mr. Austin was D.A.'s biological father, and the juvenile court appointed legal counsel to represent Mr. Austin as the putative father. At about the same time, DCFS filed a petition seeking a determination that D.A. was an abused and/or neglected child pursuant to Utah Code section 78-3a-301.
¶ 6 Mr. Austin appeared before the juvenile court for the first time on August 9, 2007. At the August 9 hearing, the State and Mr. Austin agreed that paternity would be established through DNA testing to be arranged by Mr. Austin. Because of a misunderstanding about who would obtain the testing, Mr. Austin failed to obtain the testing before the next hearing on October 2, 2007. During the October 2 hearing, the court informed Mr. Austin that a trial had been set for October 18 on the State's petition to terminate Mother's parental rights. Mr. Austin's counsel represented that Mr. Austin would be fine if the termination of Mother's parental rights proceeded without him. Counsel for Mr. Austin also indicated that she would contact the court if Mr. Austin decided otherwise. No written order was entered memorializing this hearing.
¶ 7 After the October 2 hearing, Mr. Austin indicated to his counsel that he wanted to acknowledge and establish paternity. On October 17, Mr. Austin filed a motion to intervene as a party and for paternity testing. Mr. Austin also requested that his motion be heard before or at the trial of the State's Petition to terminate Mother's parental rights. The juvenile court accepted Mother's voluntary relinquishment of her parental rights during the October 18 hearing without considering Mr. Austin's motion.
¶ 8 On October 25, the juvenile court held a hearing to consider Mr. Austin's motion to intervene as a party and for paternity testing. Mr. Austin argued that his Due Process rights had been violated when the court appointed him counsel and treated him as a party but refused to permit him to establish paternity within the proceedings to terminate Mother's parental rights. The State argued that Mr. Austin failed to timely establish paternity and was therefore never a party to the action. The State also argued that Mr. Austin had never been entitled to appointed counsel and that Mr. Austin could not be made a party because Mother had already relinquished her parental rights and there was no longer a pending action in which he could intervene.
¶ 9 On October 26, the juvenile court entered an order denying Mr. Austin's motion and finding that: (1) the burden of establishing paternity belonged to Mr. Austin; (2) paternity had not been established; (3) because Mr. Austin had not established paternity, he was never a party to the termination proceedings and therefore was not entitled to any due process protections; and (4) there was no longer an action in which Mr. Austin could intervene. After his motion was denied, *1176 Mr. Austin fired his court appointed counsel, hired his own attorney, and timely appealed the October 26 order. However, he voluntarily dismissed his appeal just two weeks after filing.[2]
¶ 10 On December 3, 2007, Mr. Austin filed a motion asking the juvenile court to determine that he had satisfied the requirements of Utah Code section 78-30-4.14 (Supp.2007) and was therefore entitled to notice of and consent to any adoption of D.A. Specifically, Mr. Austin argued that he satisfied section 78-30-4.14(4), which provides the requirements that an unmarried biological father must meet when a child is placed with adoptive parents after six months of age. The juvenile court summarily denied Mr. Austin's motion on December 18, 2007, finding that Mr. Austin had previously failed to establish paternity, was not the legal father of D.A., and therefore his consent was not required before D.A. could be adopted.
¶ 11 Mr. Austin appealed the juvenile court's December 18 order. The court of appeals certified the matter to this court and we have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b)(2008).

ISSUES AND STANDARDS OF REVIEW
¶ 12 The primary issue on appeal is whether the juvenile court erred in failing to provide Mr. Austin with an evidentiary hearing in conjunction with his December 3, 2007 motion to determine his right to notice of and consent to D.A.'s adoption under Utah Code section 78-30-4.14 (Supp.2007). To determine whether the juvenile court erred, we address the following questions:
¶ 13 First, did the juvenile court substantively adjudicate Mr. Austin's paternity before it lost jurisdiction to do so? Whether Mr. Austin's paternity was substantively adjudicated by the juvenile court is a mixed question of law and fact. We review findings of fact for clear error and conclusions of law for correctness. The juvenile court "is afforded some discretion in applying the law to the facts." H.M. v. State (State in re C.B.), 1999 UT App 293, ¶ 5, 989 P.2d 76.
¶ 14 Second, do principles of res judicata preclude Mr. Austin from asserting rights under Utah Code section 78-30-4.14? "The application of res judicata is a question of law, reviewed for correctness with no deference given to the [juvenile] court." J.M. v. State (State in re H.J.), 1999 UT App 238, ¶ 15, 986 P.2d 115.
¶ 15 Third, did Mr. Austin waive his right to notice and consent by failing to establish paternity before Mother relinquished her parental rights? Resolution of this question turns on issues of statutory interpretation, which we review for correctness with no deference to the conclusions of the juvenile court. Deseret News Publ. Co. v. Salt Lake County, 2008 UT 26, ¶ 12, 182 P.3d 372.
¶ 16 Finally, is the establishment of paternity a prerequisite to the assertion of rights under section 78-30-4.14? This question also presents issues of statutory interpretation that we review for correctness, giving no deference to the determination of the juvenile court. Id.
¶ 17 We address each of these questions in turn.

ANALYSIS

I. THE JUVENILE COURT DID NOT SUBSTANTIVELY DETERMINE MR. AUSTIN'S PATERNITY
¶ 18 The State argues that Mr. Austin cannot challenge the juvenile court's December 18 order because the juvenile court substantively adjudicated Mr. Austin's paternity in its October 26 order from which Mr. Austin failed to appeal. Mr. Austin argues that the juvenile court made only procedural findings *1177 regarding his status as a party and that it never substantively determined his paternity. We agree with Mr. Austin.
¶ 19 Under the Utah Uniform Parentage Act, both the district court and the juvenile court are authorized to adjudicate paternity. See Utah Code Ann. § 78-45g-104(1) & (2) (Supp.2007). The juvenile court, however, is a court of limited jurisdiction and has jurisdiction to adjudicate paternity only in proceedings involving abuse, neglect and dependency, or termination of parental rights. See Utah Code Ann. § 78-3a-105(1)(b) (Supp. 2007).
¶ 20 In this case, the State filed an abuse and neglect of a child claim against Mother in juvenile court and later initiated proceedings to terminate Mother's parental rights. Thus, pursuant to section 78-3a-105, the juvenile court had jurisdiction to determine Mr. Austin's paternity so long as it did so within either the abuse and neglect or termination proceedings. But the juvenile court did not substantively adjudicate Mr. Austin's paternity at the October 2 hearing and lacked jurisdiction to do so at the October 25 hearing.

A. The Juvenile Court Did Not Determine Mr. Austin's Paternity at the October 2 Hearing
¶ 21 The October 2 hearing did not adjudicate Mr. Austin's paternity. Rather, it established only that Mr. Austin had yet to establish paternity. Because there is no order memorializing the October 2 hearing,[3] we look to the record, including the transcript of the hearing and the minutes of the juvenile court, to determine the substance of what occurred.
¶ 22 The purpose of the October 2 hearing was to follow up on genetic testing that the court had ordered Mr. Austin to arrange at his initial appearance in August. Due to a misunderstanding of Mr. Austin's counsel, however, genetic testing to establish Mr. Austin's paternity had not taken place by the date of the hearing.
¶ 23 At the hearing, Mr. Austin and his counsel were informed that a trial to terminate Mother's parental rights was set for October 18. Thereafter, Mr. Austin's counsel indicated that Mr. Austin would not attempt to assert his paternity within the proceeding to terminate Mother's parental rights. However, counsel for Mr. Austin also indicated that she would contact the court before October 18 if Mr. Austin changed his mind. Given counsel's statements, the court indicated that it "would find that there is no affidavit of paternity or assertion of paternity," and that if Mr. Austin "wants to proceed differently he will contact [the court] before October 18."
¶ 24 A review of the record indicates that rather than adjudicating Mr. Austin's paternity on October 2, the juvenile court merely found that: (1) paternity had not yet been established; (2) Mr. Austin had not then asserted paternity; and (3) the State could proceed without Mr. Austin in terminating Mother's parental rights. Further, it appears that the court was disposed to let Mr. Austin have until October 18 to assert his paternity claim. Therefore, we conclude that the October 2 hearing did not result in any substantive adjudication of Mr. Austin's paternity.

B. The Juvenile Court Did Not Have Jurisdiction to Determine Mr. Austin's Paternity at the October 25 Hearing
¶ 25 The juvenile court may only adjudicate paternity in an abuse, neglect and dependency proceeding, or a proceeding to terminate parental rights. See Utah Code Ann. § 78-3a-105(1)(b) (Supp.2007). Thus, the juvenile court had jurisdiction to determine Mr. Austin's paternity prior to the termination of Mother's rights.
¶ 26 On October 17, while the juvenile court had jurisdiction, Mr. Austin filed his motion to intervene as a party and for paternity testing. Mr. Austin asked that his motion be heard at or before the October 18 *1178 trial on the State's petition to terminate Mother's parental rights. On October 18, without first considering Mr. Austin's motion, the juvenile court accepted Mother's voluntary relinquishment of her parental rights. Mother's relinquishment of her rights resulted in the dismissal of the State's petition to terminate her parental rights and effectively ended both the neglect proceeding and the proceeding against Mother to terminate her parental rights. Thereafter, even if the juvenile court had attempted to adjudicate Mr. Austin's paternity, the adjudication would be void because the court lacked jurisdiction. In any event, as discussed below, the juvenile court did not attempt to adjudicate Mr. Austin's paternity.
¶ 27 At the October 25 hearing, Mr. Austin argued that he should be allowed to intervene as a party and establish his paternity, and that his due process rights had been violated because he was denied the opportunity to participate in proceedings pertaining to the termination of Mother's parental rights. In rebuttal, the State argued that Mr. Austin was never a party to the action because he had not yet established paternity, that Mr. Austin's motion to intervene should be denied because there was no longer a pending action in which to intervene, and that Mr. Austin had failed to secure his rights in a timely manner.
¶ 28 On October 26, the juvenile court denied Mr. Austin's motion and entered an order stating that Mr. Austin "had not established paternity" before "mother voluntarily relinquished her parental rights" and therefore, "there [was] no action before the Court to grant Mr. Austin's motion to intervene." Additionally, the juvenile court found that Mr. Austin "was not a legal parent to [D.A.]" and therefore was not entitled to due process protections.
¶ 29 The October 26 order did not constitute a final substantive determination of Mr. Austin's paternity. Rather, the juvenile court found only that Mr. Austin had not established paternity before Mother relinquished her rights, thereby terminating the action before the juvenile court and rendering moot Mr. Austin's motion to intervene. Further, the court's determination that Mr. Austin was not "a legal parent to [D.A.]" did not result in a substantive determination of Mr. Austin's paternity; rather it merely indicated that because Mr. Austin had yet to establish paternity, he was not entitled to due process protections within the proceedings to terminate Mother's parental rights.
¶ 30 In summary, neither the October 2 nor the October 25 hearing resulted in a substantive determination of Mr. Austin's paternity.[4] We now address whether principles of res judicata prevent Mr. Austin from asserting his right to notice and consent under section 78-30-4.14.

II. RES JUDICATA DOES NOT APPLY
¶ 31 The State argues that principles of res judicata bar Mr. Austin from re-litigating his paternity claim. Specifically, the State argues that the doctrine of claim preclusion bars Mr. Austin's motion to declare his rights under Utah Code section 78-30-4.14 (Supp.2007).
¶ 32 Res judicata "refer[s] to the overall doctrine of the preclusive effects to be given to judgments," and includes "two branches: claim preclusion and issue preclusion." Brigham Young Univ. v. Tremco Consultants, Inc., 2005 UT 19, ¶ 25, 110 P.3d *1179 678 (internal quotation marks omitted). Here we are concerned only with claim preclusion.
¶ 33 "[C]laim preclusion bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." Id. ¶ 26 (internal quotation marks omitted). Claim preclusion applies if the following three requirements are met: "(1) The subsequent action must involve the same parties, their privies, or their assigns as the first action, (2) the claim to be barred must have been brought or have been available in the first action, and (3) the first action must have produced a final judgment on the merits of the claim." Id. (internal quotation marks omitted). The State's argument fails because Mr. Austin was never a party to the prior action and the juvenile court did not render a final judgment on the merits of Mr. Austin's paternity claim.

A. Mr. Austin Does Not Meet The "Same Parties" Requirement
¶ 34 "[T]he `general consensus in Anglo-American jurisprudence [is that] one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" Id. ¶ 28. (quoting Richards v. Jefferson County, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996)). In this case, it is clear from the record that the juvenile court never considered Mr. Austin a party to either the neglect and abuse proceedings against Mother or the State's petition to terminate Mother's parental rights. The juvenile court's October 26 order specifically states "that the initial action before the Court did not involve Mr. Austin as he had not established his paternity and had no parental rights before the Court[,]" and "[t]he action against the mother was separate from any proceedings regarding Mr. Austin."
¶ 35 While the State was aware of Mr. Austin's status as the "putative father," it never asserted any allegations of abuse or neglect against Mr. Austin or initiated any proceedings to terminate Mr. Austin's parental rights. Furthermore, while Mr. Austin was appointed counsel, he was only present and represented at two hearings before Mother voluntarily relinquished her parental rights. And both of these hearings left open the possibility of Mr. Austin becoming a party to the action by demonstrating his paternity. Because Mr. Austin was never a party to the prior action, we hold that the first requirement of claim preclusion is not met.
¶ 36 While failure of any one of the three requirements is sufficient to prevent the application of claim preclusion, we also address the requirement of a final judgment on the merits.

B. The Court Entered No Final Judgment on the Merits
¶ 37 The juvenile court erred by interpreting its October 26 order as a final judgment on the merits of Mr. Austin's paternity claim. We previously have stated that "`[o]n the merits' is a term of art that means that a judgment is rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments." Miller v. USAA Cas. Ins. Co., 2002 UT 6, ¶ 42 n. 6, 44 P.3d 663 (citing Black's Law Dictionary 1117 (7th ed.1999)). In Penrod v. Nu Creation Creme, Inc., we held that a claim dismissed for lack of subject matter jurisdiction does not constitute an adjudication on the merits. 669 P.2d 873, 876-77 (Utah 1983). Relying on the reasoning in Penrod, the court of appeals has stated that "[d]efault for inaction of a party involves no more discussion of the merits than a judgment based on jurisdiction. Both are matters of form rather than considerations of substance and legal rights." State v. Ruscetta, 742 P.2d 114, 116 (Utah Ct.App.1987).
¶ 38 Here, the October 26 order was not an adjudication on the merits of Mr. Austin's paternity claim. Instead it was a procedural finding that determined that Mr. Austin had yet to establish himself as the legal father of D.A. and that the juvenile court no longer had jurisdiction to entertain his paternity claim.
¶ 39 Because Mr. Austin was never made a party to the termination proceedings, the "same parties" requirement is not met. In addition, the final judgment on the merits *1180 requirement is not met. Therefore, the juvenile court erred in relying on principles of res judicata to deny Mr. Austin's motion to determine his rights pursuant to Utah Code section 78-30-4.14. We now address whether Mr. Austin waived his right to notice and consent by failing to establish paternity before Mother relinquished her parental rights.

III. MR. AUSTIN DID NOT WAIVE HIS RIGHT TO NOTICE AND CONSENT BY FAILING TO ESTABLISH PATERNITY BEFORE MOTHER RELINQUISHED HER PARENTAL RIGHTS
¶ 40 Relying on Utah Code section 78-30-4.13(3), the State argues that a putative father's failure to establish legal paternity before a biological mother relinquishes her rights, results in a complete waiver of his rights. Mr. Austin agrees that an unmarried biological father may waive his rights to notice and consent if he fails to initiate paternity proceedings before the mother relinquishes her rights and the child is placed with adoptive parents before the child reaches six months of age. However, in the case of a child who is placed with adoptive parents after six months of age, Mr. Austin argues that an unmarried biological father has until the adoption is final to assert his rights as long as he can demonstrate that he can meet the requirements of section 78-30-4.14(4). We agree with Mr. Austin.
¶ 41 Utah Code section 78-30-4.13 states in relevant part:
(3)(a) In order to preserve any right to notice and consent, an unmarried, biological father may, consistent with Subsection (3)(d):
(i) initiate proceedings ... to establish paternity under Title 78, Chapter 45g, Utah Uniform Parentage Act; and
(ii) file a notice of the initiation of the proceedings described in Subsection (3)(a)(i) with the state registrar of vital statistics within the Department of Health.
....
(3)(d) The action and notice described in Subsection (3)(a):
(i) may be filed before or after the child's birth; and
(ii) shall be filed prior to the mother's:
(A) execution of consent to adoption of the child; or
(B) relinquishment of the child for adoption.
Utah Code Ann. § 78-30-4.13(3)(a) & (d) (emphases added).
¶ 42 The use of the word "may" in subsection (3)(a) indicates an acceptable manner in which an unmarried biological father can preserve his right to notice and consent. But compliance with this portion of the statute is not mandatory to preserve the biological father's right to notice and consent because the statute does not indicate that this is the only manner in which an unmarried biological father can preserve his right to notice and consent. While subsection (3)(d) uses the term "shall," it is merely in reference to the permissive action allowed in section (3)(a). Thus, based on the plain language of section 78-30-4.13, an unmarried biological father can elect to preserve his right to notice and consent by initiating a paternity action. If he chooses this route, he must do so before the mother relinquishes her parental rights. However, an unmarried biological father may instead choose to rely on his substantial relationship with a child who is older than six months of age in order to assert his right to notice and consent. See Utah Code Ann. § 78-30-4.14(4). In such a case, the court need not require a DNA test unless there is a dispute about whether the man who seeks notice and consent as the unmarried biological father of a child being placed for adoption is, in fact, the child's biological father.
¶ 43 Here, it is undisputed that Mr. Austin did not establish paternity before Mother relinquished her parental rights. However, given the above analysis, we find that this did not result in a waiver of Mr. Austin's right to notice of and consent to D.A.'s adoption because Mr. Austin may alternatively rely on a substantial relationship with his child in order to be entitled to notice and consent.

*1181 IV. ESTABLISHMENT OF PATERNITY IS NOT A PREREQUISITE TO THE ASSERTION OF RIGHTS AS AN "UNMARRIED BIOLOGICAL FATHER" UNDER SECTION 78-30-4.14(4)
¶ 44 When a child is placed with adoptive parents after six months of age, an unmarried biological father is not required to establish paternity before seeking the right to notice of and consent to any adoption. Utah Code section 78-30-4.14 governs when consent to adoption is required and from whom. The State argues that the juvenile court did not err in declining to hold an evidentiary hearing on Mr. Austin's motion to declare his rights pursuant to section 78-30-4.14 because he never established that he was D.A.'s "unmarried biological father". In other words, the State argues that an unmarried biological father must establish paternity as a prerequisite to asserting any rights under section 78-30-4.14 and, therefore, because Mr. Austin had not established paternity he could not assert any rights under this section. We disagree.
¶ 45 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." State v. Gallegos, 2007 UT 81, ¶ 12, 171 P.3d 426 (internal quotation marks omitted). "Furthermore, the plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." State v. Schofield, 2002 UT 132, ¶ 8, 63 P.3d 667 (internal quotation marks omitted). As demonstrated below, the plain language of Utah Code section 78-30-4.14 indicates that an unmarried biological father need not establish paternity before asserting the right to notice of and consent to the adoption of a child where the child is placed with adoptive parents more than six months after birth.
¶ 46 The term "unmarried biological father" is defined in the statutory scheme as "a person who: (a) is the biological father of a child; and (b) was not married to the biological mother of the child ... at the time of the child's: (i) conception; or (ii) birth." Utah Code Ann. § 78-30-1.1(6). The state argues that this definition requires a putative father to affirmatively establish that he "is the biological father" before he may assert any right to notice and consent under section 78-30-4.14. Under the State's interpretation, a paternity test would always be required before a putative father could assert any right to notice and consent, regardless of the age of the child.
¶ 47 The State's proposed interpretation of an "unmarried biological father" cannot be read in harmony with the plain language of section 78-30-4.14. Section 78-30-4.14(1)(f) states that "consent to adoption of a child ... is required from ... an unmarried biological father of an adoptee, only if he strictly complies with the requirements of Subsections (4) through (8) and (10)." Thereafter, the statute draws a clear distinction between the requirements for an unmarried biological father of a child placed with adoptive parents prior to six months of age and the unmarried biological father of a child placed after six months of age. Specifically, Subsection (4) applies when a child is placed with adoptive parents after six months of age, while Subsection (6) applies when a child is placed with adoptive parents prior to six months of age. See Id. § 78-30-4.14(4) & (6).
¶ 48 Subsection (4) does not require an unmarried biological father to establish paternity before seeking the right to notice and consent. Rather the requirements of Subsection (4) focus on the putative father's relationship with and commitment to a child who is placed with adoptive parents after six months of age. Id. § 78-30-4.14(4)(a)-(b). If the unmarried biological father can demonstrate compliance with the requirements of Subsection (4), his right to notice and consent must be honored, regardless of whether he has previously established paternity.
¶ 49 Although Subsection (6) of section 78-30-4.14 specifically requires that the unmarried biological father "initiate[] proceedings... to establish paternity," this subsection only applies "with regard to a child who is six months of age or less at the time the child is placed with adoptive parents." Id. § 78-30-4.14(6). Further, Subsection (6) does not *1182 mandate that paternity be established, rather, it only requires that a paternity proceeding be "initiate[d]" prior to seeking rights under section 78-30-4.14.
¶ 50 This distinction between biological fathers of infants placed before six months of age and those of infants placed after six months of age conforms to the United States Supreme Court's requirement that "due process considerations be different depending on the level of parental relationship established by the unmarried biological father." John A. Bluth, Can an Unmarried Biological Father Recover His Child and Damages?, 2002 Utah L.Rev. 577, 589 (2002); see Lehr v. Robertson, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) ("When an unwed father demonstrates a full commitment to the responsibilities of parenthood by [coming] forward to participate in the rearing of his child, his interest in personal contact with his child acquires substantial protection under the Due Process Clause." (internal quotation marks omitted)(alteration in original)).
¶ 51 Under the plain language of Utah Code section 78-30-4.14, we hold that establishment of legal paternity is not a prerequisite to an unmarried biological father's right to notice and consent in cases where the child is older than six months of age when placed with adoptive parents.[5] There is no dispute that D.A. was older than six months of age when he was placed with adoptive parents. Therefore, the juvenile court erred by denying Mr. Austin an evidentiary hearing to determine whether he had complied with the requirements of section 78-30-4.14(4).

CONCLUSION
¶ 52 The juvenile court erred in failing to hold an evidentiary hearing to determine whether Mr. Austin established a substantial relationship with D.A. sufficient to entitle him to notice and consent under Utah Code section 78-30-4.14. The juvenile court's October 26, 2007 order was not a final substantive determination of Mr. Austin's paternity, rather it was a procedural finding that Mr. Austin had not yet established paternity. As such, the October 26, 2007, order does not have any waiver or res judicata effect. Mr. Austin did not waive his right to notice and consent by failing to establish paternity prior to Mother's relinquishment of her parental rights. And establishment of paternity is not a prerequisite to asserting the right to notice of and consent to an adoption in cases where the child is older than six months of age when placed with adoptive parents. We therefore remand this matter to the juvenile court with instructions that it hold an evidentiary hearing to determine whether Mr. Austin has complied with the requirements of section 78-30-4.14.
¶ 53 Chief Justice DURHAM, Associate Chief Justice DURRANT and Justice NEHRING concur in Justice PARRISH's opinion.
WILKINS, Justice, dissenting:
¶ 54 I respectfully dissent. I would affirm the decision of the juvenile court.
¶ 55 As the majority opinion notes, only the order of December 18, 2007, is before us on appeal. That order correctly denied Mr. Austin's "Motion for Determination of Rights Pursuant to Utah Code § 78-30-4.14" by which he attempted to revive his lost opportunity to establish a legal right to participate in the adoption proceeding then before the juvenile court. At the time of the December motion, Mr. Austin had taken no effective steps to preserve his claimed standing as the biological father of the child, and had failed to avail himself of the opportunities given him by the juvenile court.
*1183 ¶ 56 On the record before it, the juvenile court could not have found Mr. Austin to have been the biological parent of the child, nor could it have found him to be the legal parent of the child. To have done so would have been without evidentiary support, and error.
¶ 57 Mr. Austin was not a party to the abuse, neglect and dependency proceeding against the child's biological mother. When he was named by the mother as the child's biological father, the juvenile court appointed counsel to protect Mr. Austin's interests as the putative biological father and offered Mr. Austin the opportunity to establish his biological relationship to the child through DNA testing. Mr. Austin failed to do so in a timely manner, and the juvenile court, in accord with various statutory mandates, proceeded to resolve the matter as to the only recognized parent, the mother, accepting her voluntary relinquishment of any claim of parental rights.
¶ 58 Again, as the majority opinion notes, on the termination of the biological mother's parental rights, the juvenile court lost jurisdiction to determine Mr. Austin's paternity of the child. Consequently, Mr. Austin's motion filed the day prior to the termination trial date seeking to intervene as a party and for paternity testing was untimely. Without establishing his legal relationship with the child, Mr. Austin had no standing to participate in the termination trial against the mother. And since the juvenile court had already ordered paternity testing for Mr. Austin, testing he could have availed himself of anytime after August 9, 2007 when the State and Mr. Austin agreed to it, his October motion was fatally untimely.
¶ 59 Notwithstanding the majority's suggestion that the juvenile court should have somehow heard and resolved Mr. Austin's October 17 motion prior to the October 18 termination trial, no such mandate exists for the juvenile court. To the contrary, a motion filed on October 17, if considered at all, must allow all parties notice and a chance to respond. Appropriately, the juvenile court held a hearing one week later to consider and resolve Mr. Austin's motion.
¶ 60 The juvenile court's ruling was factually and legally correct, in all regards: The burden to establish his legal claim on the child rested on Mr. Austin; he had failed to do so; as such, he was a `legal stranger' to the child and the termination proceedings and could not be admitted as a party from which might accrue the due process rights he claimed; and finally, since the termination proceeding was concluded, no termination action remained in which Mr. Austin could intervene, and the juvenile court was without jurisdiction to act further on his request as it applied to establishing paternity.
¶ 61 Mr. Austin elected to not appeal this order. The order was final in that it resolved all remaining issues related to Mr. Austin's participation in any fashion in the child welfare case.
¶ 62 In December 2007, Mr. Austin filed a new motion in the adoption proceeding before the juvenile court, asking the juvenile court to determine that he was entitled to notice and hearing in the adoption proceeding because he had met the requirements of Utah Code section 78-30-4.14 (Supp.2007). The juvenile court denied the motion on December 18, 2007 on the basis that Mr. Austin had still failed to establish his paternity and was therefore still a `legal stranger' to the child; therefore his consent was not required for any adoption. This order Mr. Austin appeals.
¶ 63 The juvenile court was absolutely correct in its order of December 2007. Mr. Austin had not established his paternity, or for that matter any other legally cognizable relationship with the child, and as such was entitled to no more notice than any other stranger to the child. The operative fact found by the juvenile court is that Mr. Austin had not established his paternal relationship with the child. On appeal, Mr. Austin does not dispute this factual finding. He argues that he has yet to be given the opportunity to do so. This, of course, is incorrect. As Mr. Austin indicated at argument before us, a paternity action was pending in the district court at that very time. Nothing prevented Mr. Austin from filing such an action at any time from conception of the child until the present. In August of 2007 the juvenile *1184 court made clear that establishing a legal father-to-child relationship was necessary for Mr. Austin to participate in the proceedings, and by extension, to receive any process, due or otherwise, in the course of those proceedings.
¶ 64 In my view, the language of 78-30-4.14 is not ambiguous in any meaningful way. The clear intention of the statute, and the overall title, is to provide an unambiguous way for a man claiming fatherhood to protect himself from just such consequences as Mr. Austin now faces. However, because of the exceptionally strong federal and state policies on the speed with which children must be placed in a permanent and healthy relationship, biological parents and putative biological fathers have a very restricted time within which to take legal steps to protect any claim to parental rights. The statute here requires a putative father to take action sooner if a child is less than six months old when placed for adoption. However, it clearly does not permit the putative father of a child more than six months old when placed for adoption to enjoy an unending opportunity to establish paternity. When, as here, a putative father delays the completion of an adoption for a period of years, the majority would interpret the statute to allow any act seeking to establish paternity during that period to be legally effective, so long as it is complete prior to the adoption becoming final. I do not agree with this interpretation.
¶ 65 I read 78-30-4.13 to require any action by the putative father to be "consistent with Subsection (3)(d)" in that it must be filed within the time specified in (3)(d). In this, I differ from my colleagues.
¶ 66 I would affirm the judgment of the juvenile court. Mr. Austin's failure to act timely to establish his claim of fatherhood has denied him that chance. The right of the child to a permanent set of parents with which to build a life is paramount.
NOTES
[*] Corrections were made in paragraphs 4, 24, and 35. An addition was made to paragraph 42.
[1] Utah's Adoption Statute was amended and renumbered in 2008, however, we cite to the 2007 version in effect at the time Mr. Austin filed his motion to determine his right to notice and consent.
[2] Prior to appealing the October 26 order, Mr. Austin filed a Motion for review and modification of the October 26 order and a formal petition for paternity with the juvenile court. The juvenile court denied Mr. Austin's motion, finding that Mr. Austin was not a party to the proceedings and did not have standing because he never established paternity. The juvenile court also indicated that it no longer had jurisdiction to hear Mr. Austin's paternity petition.

Mr. Austin also filed a Notice of Commencement of Paternity Proceedings with the Utah Department of Health and Office of Vital Records & Statistics and an affidavit of Paternity with the juvenile court.
[3] The juvenile court asked the State to prepare a short finding and order at the October 2 hearing, but the State never did so. The State now argues that the October 26 order encompassed both the October 25 hearing and the October 2 hearing. However, this simply is not the case. The October 26 order does not even purport to memorialize the October 2 hearing.
[4] The State also argues that because Mr. Austin initially appealed the October 26 order and then voluntarily dismissed that appeal, he waived any right to appeal the determination that he is not D.A.'s legal father, and thus effectively waived the opportunity to establish paternity. As explained above, the State misconstrues the substance of the juvenile court's October 26 order. Because the juvenile court never made a final substantive determination of Mr. Austin's paternity, we also hold that Mr. Austin has not waived any right to an adjudication of his paternity by a court of competent jurisdiction.

The juvenile court no longer has jurisdiction to adjudicate Mr. Austin's paternity, therefore, any further determination of his paternity must take place in the district court. However, because we find that establishment of paternity is not a prerequisite to the assertion of rights under section 78-30-4.14, it is not necessary for Mr. Austin to establish his paternity in the district court before seeking the right to notice of and consent to the adoption of D.A. within any pending adoption proceeding.
[5] Utah Code section 78-30-4.24 (Supp.2007) provides the standing requirement for one seeking a determination of any rights to a child who is placed for adoption and states that "[a]ny interested party may petition a court having jurisdiction over adoption proceedings for a determination of the rights and interests of any person who may claim an interest in a child under this chapter, at any time prior to the finalization of the adoption." Utah Code Ann. § 78-30-4.24 (emphasis added). While we have not specifically addressed this in the main body of the opinion, we note that Mr. Austin has always held himself out to be the biological father of D.A., has filed an affidavit of paternity with both the juvenile court and the district court, and has attempted to initiate paternity proceedings within the district court. Therefore he surely qualifies as an "interested party" under the broad language of this standing statute.