2013 UT App 132

# THE UTAH COURT OF APPEALS

KRIS HANSEN,
Plaintiff and Appellant,
*v.*
THE BANK OF NEW YORK MELLON AND MARLON L. BATES,
Defendants and Appellees.

Memorandum Decision
No. 20120010-CA
Filed May 23, 2013

Fifth District, St. George Department
The Honorable G. Rand Beacham
No. 110500249

Adam D. Ford and Matthew B. Crane, Attorneys
for Appellant
Joseph A. Skinner, Attorney for Appellee
Marlon L. Bates
Stephen C. Tingey and Elaina M. Maragakis,
Attorneys for Appellee The Bank of New York
Mellon

JUDGE STEPHEN L. ROTH authored this Memorandum Decision,
in which JUDGES GREGORY K. ORME and JAMES Z. DAVIS
concurred.

ROTH, Judge:

¶1     Plaintiff Kris Hansen appeals the district court's decision to grant the respective motions to dismiss filed by Defendants The Bank of New York Mellon (the Bank) and Marlon L. Bates on the basis that Hansen's claims are barred by res judicata. We affirm.

¶2     In 2006, Hansen executed a deed of trust on certain property, naming Mortgage Electronic Registration Systems, Inc. (MERS) as

beneficiary. In May 2010, the Bank, purporting to act as the beneficiary under the trust deed, executed and recorded a Substitution of Trustee, naming Bates as a trustee. That same month, Bates, acting as trustee, initiated nonjudicial foreclosure proceedings against Hansen's property on the Bank's behalf by executing and recording a Notice of Default.

¶3    In August 2010, Hansen filed a federal lawsuit against the Bank, MERS, and others, attempting to prevent the Bank from foreclosing on his property. In the federal lawsuit, Hansen requested declaratory relief, claiming that the defendants, including the Bank, "did not own a legal interest in [his] property due to the illegal securitization of [his] . . . mortgage loan." In November 2010, the federal lawsuit was dismissed with prejudice.

¶4    In October 2010, MERS assigned the beneficiary's interest in the trust deed to the Bank and recorded the assignment. The assignment occurred after the Substitution of Trustee and Notice of Default had been executed and recorded in May 2010, and after Hansen had filed the federal lawsuit in August 2010, but before the federal lawsuit was dismissed in November 2010. Hansen filed the complaint in the case before us in January 2011. In his complaint, Hansen alleged claims of fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and improper execution of foreclosure proceedings. The theory underlying Hansen's claims is that the Bank and Bates acted without authority in initiating foreclosure proceedings on his property in May 2010 because the Bank was not assigned the beneficiary's interest in the deed of trust until October 2010. On Defendants' motions, the district court dismissed Hansen's claims with prejudice, concluding that they were barred by res judicata as a result of the dismissal of the federal suit.

¶5    "The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194 (citation and internal

quotation marks omitted). Only claim preclusion is at issue here.[1] "[C]laim preclusion corresponds to causes of action," *id.* (alteration in original) (citation and internal quotation marks omitted), and "bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously," *In re D.A.*, 2009 UT 83, ¶ 33, 222 P.3d 1172 (citation and internal quotation marks omitted). A claim is precluded in a subsequent action if (1) "both cases . . . involve the same parties or their privies," (2) "the claim that is alleged to be barred" was "presented in the first suit" or "could and should have been raised in the first action," and (3) "the first suit . . . resulted in a final judgment on the merits." *Mack*, 2009 UT 47, ¶ 29 (citation and internal quotation marks omitted).

¶6    Hansen does not dispute that the federal lawsuit resulted in a final judgment on the merits or that he and the Bank were both parties in the federal lawsuit. He argues, however, that Bates, who was not a party to the federal lawsuit, is not in privity with any of the parties to the federal lawsuit, so res judicata cannot bar his claims against Bates. He also argues that the claims he brings in this case against both Bates and the Bank are not barred under claim preclusion because those claims could not have been raised in the federal lawsuit. We address each argument in turn.

## I. Privity

¶7    Hansen first argues that Bates was not a privy of the Bank in the federal suit. "'The legal definition of a person in privity with another, is a person so identified in interest with another that he represents the same legal right.'" *Press Publ'g, Ltd. v. Matol Botanical*

---

1. In his brief, Hansen also addressed the issue preclusion branch of res judicata. But because we affirm the district court's decision on the basis of claim preclusion, we need not reach the question of issue preclusion. Further, the parties only presented arguments under claim preclusion to the district court, and the Defendants have similarly limited their arguments on appeal.

*Int'l, Ltd.*, 2001 UT 106, ¶ 20, 37 P.3d 1121 (quoting *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978)). "[P]rivity depends mostly [on the parties'] relationship to the subject matter of the litigation." *Id.* (second alteration in original) (citation and internal quotation marks omitted). Thus, the issue is whether Bates, as the trustee under the trust deed, represents the same legal interest as the Bank in its capacity as the beneficiary under the trust deed in the federal suit.

¶8     In arguing whether Bates and the Bank are privies, the parties rely on the statutory definitions of a trust deed, trustee, and beneficiary. A trust deed is a "deed . . . conveying real property to a trustee in trust to secure the performance of an obligation of the trustor . . . to a beneficiary." Utah Code Ann. § 57-1-19(3) (LexisNexis 2010). The beneficiary is "the person . . . designated in a trust deed as the person for whose benefit a trust deed is given," while the trustee is "a person to whom title to real property is conveyed by trust deed." *Id.* § 57-1-19(1), (4).

¶9     According to Hansen, all of the defendants in the federal lawsuit were beneficiaries under the deed of trust. Hansen thus argues that because Bates is not a beneficiary under the deed of trust, he does not represent the same legal right as the Bank. Rather, Hansen argues, Bates is a trustee, making his interest in the deed of trust "substantively different from that of a beneficiary." In particular, Hansen argues that a "trustee is not a simple employee, agent or assign of the beneficiary but . . . has duties to the trustor or homeowner." (Citing *Russell v. Lundberg*, 2005 UT App 315, ¶ 19, 120 P.3d 541 ("In certain circumstances . . . it is possible that the trustee is bound by a fiduciary duty to act in the interest of the trustor." (citation and internal quotation marks omitted)).) The Bank and Bates point out, however, that a trustee holds property for the benefit of the beneficiary, namely to secure the debt owed to the beneficiary, and that this is particularly true in the case of foreclosure where the trustee acts at the instance and in the interest of the beneficiary to foreclose the secured property

in order "to assure the payment of the debt secured by the trust deed." *See id.* ("A trustee's primary obligation is to assure the payment of the debt secured by the trust deed."). Foreclosure is therefore a circumstance in which the duties and interests of the trustee align with the interests of the beneficiary and not with the trustor property owner.

¶10    Under the facts of this case, we agree with the Bank and Bates that the Bank's legal interest as the beneficiary and Bates's legal interest as the trustee are aligned in these lawsuits. In both the federal lawsuit and this lawsuit, Hansen has attempted to prevent foreclosure on his property by arguing that the Bank does not have a beneficial interest in the trust deed. Bates has acted in his capacity as the trustee under the trust deed to foreclose on the property for the benefit of the Bank. Accordingly, we conclude that for purposes of this case, the Bank and Bates represent the same legal interest and are therefore in privity. *See, e.g., Brunson v. Bank of N.Y. Mellon*, 2012 UT App 222, ¶ 4, 286 P.3d 934 (per curiam) (reasoning that where the first lawsuit had been litigated against the trustee under the trust deed and the second action was brought against both the trustee and the beneficiary of the trust deed, the second lawsuit was "against parties who were in privity with" the parties in the first action).

II. The Claims Could Have Been Raised in the Federal Suit

¶11    Hansen next argues that the claims alleged in this case could not have been brought in the federal lawsuit because the facts that establish the basis for these claims only occurred after the federal lawsuit was filed.[2] The Bank and Bates disagree, asserting that the

---

2. In challenging the "same claim" element of claim preclusion, Hansen argues that the claims alleged in this lawsuit could not have been brought in the federal lawsuit because these claims are

(continued...)

critical facts upon which Hansen's claims are based occurred months before he filed the federal lawsuit. We agree with the Bank and Bates.

¶12    In essence, Hansen claims that the Bank did not have authority to execute and record the Substitution of Trustee appointing Bates as trustee, and consequently, Bates lacked authority to execute and record the Notice of Default because the beneficial interest in the trust deed was not assigned to the Bank until months later. Indeed, the beneficial interest in the trust deed was not assigned to the Bank until October 2010, five months after the Substitution of Trustee and Notice of Default were executed

---

2. (...continued)

based on facts that did not exist at the time he brought the federal lawsuit. Hansen does not argue that the claims alleged in this lawsuit should not have been brought in the federal lawsuit because they arise out of a different transaction or set of operative facts. *See generally Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 30, 221 P.3d 194 ("Claims or causes of action are the same as those brought or that could have been brought in the first action if they arise from the same operative facts, or in other words from the same transaction." (citing Restatement (Second) of Judgments § 24 (1982))). Based on a cursory review, it appears that Hansen's claims raised in this lawsuit and in the federal lawsuit are part of the same transaction or set of operative facts. *See id.*; *see also Brunson v. Bank of N.Y. Mellon*, 2012 UT App 222, ¶¶ 2, 5, 286 P.3d 934 (per curiam) (reasoning that where the first lawsuit raised issues related to securitization and the second lawsuit raised claims of wrongful foreclosure and both lawsuits were brought to prevent foreclosure of the same loan involving the same property, the claims brought in both lawsuits were the same for res judicata purposes). But because Hansen does not raise this issue in any meaningful way, we will not consider the issue more thoroughly. *See generally* Utah R. App. P. 24(a)(9).

and recorded in May 2010 and two months after the federal lawsuit was filed in August 2010. As Hansen explains it, "[t]he key factual assertion raised in the present case is that [t]he Bank . . . received its interest in [Hansen]'s loans through an assignment of Deed of Trust [in October 2010] . . . , transferring a beneficial interest in the Deed of Trust to [t]he Bank . . . yet appointed Bates and instructed him to act as trustee five months earlier[,]" and that "Bates accepted this appointment and attempted to act as trustee on behalf of [t]he Bank even though he should have known that the [B]ank did not yet have authority to act."

¶13    Thus, according to Hansen, "[t]hese causes of action each depend on the [a]ssignment that occurred after the [federal lawsuit] was filed." But in reality, Hansen's claims actually depend on the allegation that the Bank and Bates lacked authority in May 2010, not that the authority was finally conveyed with the beneficial interest months later in October. In other words, the alleged lack of authority was a fact in existence at the time the federal suit was filed in August 2010, regardless of the timing of the later assignment or whether a subsequent assignment occurred at all. In fact, the October 2010 assignment seems largely irrelevant to the lack of authority issue because it had no effect on the status of the Bank and Bates in May 2010, and its later occurrence changed that status only from that point forward. Because that critical fact existed as early as May 2010 and well through the August 2010 filing date, we conclude that the claims alleged in the case before us could have been brought in the federal lawsuit.

¶14    Given the substance of Hansen's claims, the question arises whether Hansen knew or reasonably should have known about the nonexistence of the assignment after May 2010, based on his knowledge that the Bank and Bates had executed and recorded the Substitution of Trustee and Notice of Default. But notably, Hansen

has not presented such an argument on appeal.[3] We therefore limit our analysis to the arguments Hansen has actually raised.[4]

¶15 Hansen does not otherwise challenge the district court's decision. Because we conclude that Bates was in privity with the Bank's position in the federal lawsuit and Hansen's claims in this case could have been brought in the federal action, we hold that the district court correctly dismissed Hansen's claims as being barred by res judicata.

¶16 Affirmed.

––––––––––––

3. In his complaint, Hansen alleges that Defendants misrepresented their authority to initiate foreclosure proceedings on the property and that he reasonably relied on those misrepresentations. He did not allege in his complaint nor argue in opposing Defendants' motions to dismiss that he did not know or reasonably could not have known that the Bank had not been assigned the beneficiary's interest in the trust deed. We therefore decline to consider this issue.

4. Another fact that Hansen argues did not exist when he filed the federal lawsuit is that in January 2011, Defendants scheduled a foreclosure sale. According to Hansen, he could not have pleaded a claim for "improper execution of foreclosure proceedings," as he has done in this case, without the occurrence of that fact. However, Defendants initiated foreclosure proceedings by recording a Notice of Default in May 2010. Were the foreclosure proceeding to move forward, it would be inevitable that a foreclosure sale would eventually be scheduled. Thus, Hansen has not convinced us that the scheduling of a foreclosure sale is a new fact that gave rise to a claim that would not otherwise have been available to him, particularly because this claim, like the others, is based on the theory that Defendants acted without authority in executing and recording the Notice of Default in May 2010.